# CONNECTICUT MUTUAL LIFE INSURANCE COMPANY *v.* CUSHMAN and Another.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE NORTHERN DISTRICT OF ILLINOIS.

*Conflict of Laws—Constitutional Law—Contract—Interest—Mortgage—Redemption—Statutes of Illinois.*

The statutes of Illinois relating to the redemption of mortgaged property from sales under decree of the federal courts, examined.

While the local law, giving the right of redemption first to the mortgagor, then to judgment creditors, is a rule of property obligatory upon the federal

court, it is competent for the latter by rules to prescribe the mode in which redemption from sales under its own decrees may be effected.

The rule in the Circuit Court of the United States for the Northern District of Illinois, requiring a judgment creditor to pay the redemption money to the clerk of that court, and not to the officer holding the execution, sustained as being within the domain of practice, and not affecting the substantial right to redeem within the time fixed by the local statute.

The Illinois statute of 1879, entitling the purchaser in case of redemption to receive interest upon his bid at the rate of eight per cent. per annum (the previous law prescribing ten per cent.), is applicable to all decretal sales of mortgaged premises thereafter made, although the mortgage was given before the passage of that statute. Such reduction in the rate of interest did not impair the obligation of the contract between mortgagor and mortgagee, because the amendatory statute did not diminish the duty of the mortgagor to pay what he agreed to pay, or shorten the period of payment, or affect any remedy which the mortgagee had, by existing law, for the enforcement of his contract.

The purchaser at decretal sale is entitled to interest at the rate prescribed by statute when he purchased. The amendatory statute operated *proprio vigore*, to change the rule of court previously fixing the rate at ten per cent.

The existing laws with reference to which the mortgagor and mortgagee must be assumed to have contracted are those only which in their direct or necessary legal operation controlled or affected the obligations of their contract.

Bill for foreclosure of a mortgage: decree of foreclosure: demand to redeem and tender of payment: petition of the plaintiff, purchaser at the foreclosure sale, for a master's deed: denial of that petition; and an appeal from that denial.

The property involved in this suit was certain real estate in the city of Chicago, covered by a mortgage, executed January 29th, 1880, by W. H. W. Cushman and wife to secure the Connecticut Mutual Life Insurance Company in the payment of $75,000, five years thereafter, with interest payable semi-annually, at the rate of nine per cent. per annum. It was thereafter conveyed, subject to that mortgage, to one W. H. Cushman.

The local law, in force when the mortgage was given, provided that upon a sale of lands or tenements under execution, the officer should give to the purchaser a certificate showing the property purchased, the sum paid therefor, or, if the plaintiff was the purchaser, the amount of his bid and the time when the purchaser (unless the property be redeemed as provided in the statute) would be entitled to a deed. A duplicate of such certificate, signed by the officer, was required to be filed by him

in the office of the county recorder within ten days from the sale. Within twelve months from sale, the defendant, his heirs, executors, administrators, or grantees could redeem by paying the purchaser, *or the officer* for his benefit, the sum bid by the former, with interest thereon at the rate of *ten* per cent. per annum from date of sale. Whereupon the sale and certificate became null and void. After the expiration of twelve, and at any time before the expiration of fifteen months from the sale, a judgment creditor (even one who became such after the expiration of twelve months from the sale, could redeem by suing out execution, placing the same in the hands of the proper officer (whose duty was to indorse thereon a levy upon the property to be redeemed), and by paying *to such officer*, for the use of the purchaser, his executors, administrators, or assigns, the amount for which the premises were sold, with interest at the rate of *ten* per cent. per annum from the date of sale. The officer, having filed in the county recorder's office a certificate of the redemption by such judgment creditor, was required to advertise and offer the property for sale under the execution. The judgment creditor, thus redeeming the property, was considered as having bid at the execution sale the amount of the redemption money paid by him with interest from the date of redemption to the day of sale. If no larger bid was offered, the property was to be struck off and sold to such judgment creditor, who became entitled to a deed.

The statute provided that the whole or part of any lands sold under execution could be redeemed by a judgment creditor in the like distinct quantities or parcels in which the same were sold; also, if there be no redemption within the time prescribed, that the purchaser was entitled to a deed; further, that "lands sold under and by virtue of any decree of a court of equity for the sale of mortgaged lands" might be redeemed by the mortgagor, his heirs, executors, administrators, or grantees, and by judgment creditors, in the same manner as was prescribed for the redemption by such parties, respectively, of lands sold under executions at law.

By a subsequent act the foregoing statutes were amended, so as to require the party redeeming to pay the amount going to

the purchaser, with interest at only eight per cent. per annum. This act continued in force till after July 1st, 1879.

After the passage of this act the rules of the circuit court relating to redemption were amended so as to read as follows:

" *Ordered*, That the following rules be entered in regard to the redemption of property from sales under decrees in chancery in this court :

" *First*. That whenever any real estate is sold by a master in chancery, special commissioner, or other officer of this court, by virtue of any decree of foreclosure of mortgage or vendor's lien, or mechanics' lien, or for the payment of money, the master in chancery, or officer making such sale, shall, instead of executing a deed for the property so sold, give to the purchaser a certificate describing the premises purchased by him, showing the amount paid therefor, or, if purchased by the complainant, in whose favor the decree is made, the amount of his bid, and that such purchaser will be entitled to a deed of the property so purchased, on the expiration of fifteen months from the date of said sale, unless said property shall have been duly redeemed.

" *Second*. It shall be the duty of the master in chancery, or other officer making such sale, to report the same to the court within ten days from the day of the making thereof, unless time for filing said report shall be extended by the court, which report shall be confirmed as a matter of course, unless objections to said sale are filed within twenty days after said report is required to be filed.

" *Third*. Any defendant in the suit in which such decree is rendered, his heirs, administrators, or assigns, or any person interested through or under the defendant in the premises so sold, may, within twelve months from said sale, redeem the real estate so sold *by paying to the purchaser thereof*, his heirs, executors, or assigns, *or to the clerk of this court* for the benefit of such purchaser, his executors, administrators, or assigns, the sum of money for which said premises were sold or bid off, with interest at the rate of ten per cent. per annum from the date of such sale, and in case such redemption is made by payment of the money to the clerk, the person so redeeming shall also pay an additional sum of one per cent. on the amount so paid in as the clerk's fee for receiving and disbursing said redemption, and the clerk on re-

ceiving said redemption money shall at once deposit the same in the registry of this court, and file a certificate among the papers in the cause in which said decree was entered, stating that said real estate has been redeemed.

" *Fourth.* If property sold under any decree of this court shall not be redeemed by the defendant or defendants in the decree, or some persons claiming by, through or under him or them, within twelve months from the date of said sale, then any creditor of the debtor defendant or defendants in such decree, who holds a decree or judgment in full force, and on which he is entitled to execution against such debtor defendant or defendants, may redeem said property after the expiration of twelve months and before the expiration of fifteen months, in the following manner : Such creditor shall sue out an execution on his decree or judgment, and place the same in the hands of the proper officer to execute, who shall thereupon indorse on such execution a levy on the property which is to be redeemed, and thereupon the person desiring to make such redemption shall pay *to the holder of such certificate,* or *to the clerk of this court,* the amount for which the premises to be redeemed were sold, with interest at the rate of ten per cent. per annum from the date of such sale, and if the redemption is made by the payment of the money to the clerk, there shall also be paid the additional sum of one per cent. on the amount of money so paid to redeem, as the clerk's fee for receiving and disbursing said redemption money. And the clerk shall at once pay said money into the registry of the court for the use of the person entitled thereto, and give a receipt for said sum to the person making such redemption.

" And the clerk of this court shall thereupon make and file in the office of the recorder of the county where said premises are situate, a certificate of such redemption, and the officer in whose hands said execution shall have been placed, and who shall have made said levy, shall proceed in the manner required by the twentieth and twenty-first sections of chapter seventy-seven of the Revised Statutes of Illinois, entitled " Judgments, decrees, and executions." - After the first redemption, made as aforesaid, any other judgment or decree creditor who shall have the right under the laws of this State to redeem said premises from the first redeeming judgment or decree creditor, may apply to this court for leave to redeem said premises from the creditor first

redeeming the same, and the court will make such order in regard to further redemption as the rights of the parties, under the law shall seem to require.

"*Fifth*. In all cases when the master in chancery or any other special or general officer of this court is required to make sale of real estate under any decree or order of this court in any chancery suit, notice of the time and place of such sale shall be given by publication in some newspaper of general circulation published in the county where said real estate is situated, and in case there is no such newspaper published in such county, then such publication shall be made in one of the newspapers hereafter named, published in the city of Chicago, such publication to be made as often as once each week for three successive weeks, and the first publication shall be at least twenty days before the day fixed for such sale."

On the 12th day of December, 1877, the insurance company instituted a suit for foreclosure, in which a final decree of sale was passed on the 14th day of July, 1879. The sale occurred on the 15th day of August, 1879, when the insurance company became the purchaser of various lots, into which the mortgaged premises had been subdivided, at prices aggregating in amount the principal and interest of its debt—the latter being computed up to the decree at the rate stipulated in the mortgage, and thereafter at the statutory rate of six per cent. per annum. The sale was duly confirmed by an order entered October 10th, 1879.

On the 3d day of November, 1880—these rules being in force and no redemption having been made by the mortgagor or by any one claiming under him—a judgment by confession on a warrant of attorney was entered in the court below for $10,150 in favor of Henry S. Monroe against W. H. Cushman, the grantee of the mortgagor. An execution on that judgment, sued out November 9th, 1880, was placed in the hands of the marshal of the United States for the Northern District of Illinois, who indorsed thereon a levy, as of that date, on a portion of the lots purchased by the insurance company. Monroe, on the succeeding day, deposited with the clerk of the federal court the sum of $12,741.95, which covered as well the aggre-

gate amount of principal and interest, as the commissions and fees allowed to the clerk. R. S. § 828. Thereupon, on the next day, the clerk, under his hand and seal of office, issued a certificate of redemption for the lots so levied on.

On November 15th, 1880—on which day, according to the rule established by the Supreme Court of Illinois, the additional three months given to judgment of creditors expired, Robert D. Fowler, assignee of Monroe's judgment and of his interest in the levy and redemption that had been made, deposited with the clerk of the federal court the further sum of $62,037.01 for the redemption of certain others of the lots purchased by the company. That sum covered the latter's bid for those lots, with interest at eight per cent. A certificate of redemption covering such lots was issued on the day of Fowler's deposit. The marshal, on November 16th, 1880, advertised for sale, on the 8th day of December, 1880, all the lots sought to be redeemed under the Monroe judgment and execution. The record does not show the indorsement of any additional levy beyond that made November 9th, 1880. The sale occurred as advertised, Fowler becoming the purchaser of all the lots embraced in the two certificates of November 10th and November 15th, at a sum equal to the amount of the sums deposited, with interest at the rate of eight per cent. per annum from the date of such deposits. 'No money was paid to the marshal, and none to any other officer, except that deposited with the clerk, who, as required by the act of Congress and the rules in question, placed it in the registry of the court.

The property so sold was, as was claimed by appellee, lawfully redeemed within the time and in the mode prescribed in the rules established by the court below for the redemption of real estate from sales under decrees.

But the contention of the insurance company was that those rules did not conform to the statutes of Illinois; that the latter, equally, as to the time within which, the persons by whom, and the mode in which, redemption might be effected, constituted a rule of property, obligatory as well upon the federal court as upon the courts of the State; and as the property sold was not redeemed in the particular mode prescribed by the local stat-

utes, there was no effectual redemption, and, consequently, the company became entitled to a deed at the expiration of the period fixed for the exercise of the right of redemption.

The circuit court was of opinion, and so adjudged, that the rights of the parties as to the mode of redemption were to be determined by its rules; and since there had been a substantial compliance with them, the application by the company for a deed was overruled. From the final order denying that application this appeal was prosecuted.

*Mr. E. S. Isham* and *Mr. C. Beckwith* for appellant. I. The parties to the record are the mortgagee and purchaser at a sale under foreclosure on one side, and on the other a purchaser of a judgment by confession for the purpose of redemption. Such purchaser has no right of redemption except as it is created by statute. *Phillips* v. *Demoss*, 14 Ill. 410. He has no claim to have the statutory terms of redemption enlarged by a court of equity. Apart from statute, no right exists to redeem from a mortgage sale. *Fisher* v. *Eslaman*, 68 Ill. 78. In terms it must be conceded that the federal rule is inconsistent with the statute, and a compliance with its terms is not a compliance with the terms of the statute. It is, therefore, said that the differences are not of substance, but of form, which a court of equity should disregard. We concede that when a general right is given by a special statute of a State, the federal courts will give effect to it, and in matters of mere form pursue their own. *Railway Company* v. *Whitton*, 13 Wall. 270. But this cannot be done where compliance with the statutory preliminary methods is a condition of the enjoyment of the right. And the courts of Illinois have held that such right of redemption is statutory and must be exercised in pursuance of the statute. *Littler* v. *People*, 43 Ill. 188; *Stone* v. *Gardner*, 20 Ill. 304; *Durley* v. *Davis*, 69 Ill. 133; *Clingman* v. *Hopkie*, 78 Ill. 152; *Brine* v. *Insurance Company*, 96 U. S. 627. II. The act reducing the rate of interest to be paid on redemption was passed after this mortgage was made, and after the bill of foreclosure was filed. To apply it in this case is, in fact, to impair the obligation of a contract, and brings this transaction within the line of

cases which decide that laws which subsist at the time of making a contract enter into and form part of it as if they were expressly referred to or incorporated in its terms. *Von Hoffman* v. *Quincy,* 4 Wall. 535.; *Bronson* v. *Kinzie,* 1 How. 311; *Edwards* v. *Kearzey,* 96 U. S. 595; *McCracken* v. *Hayward,* 2 How. 608; *Planters' Bank* v. *Sharp,* 6 How. 301; *Green* v. *Biddle,* 8 Wheat. 1.

*Mr. George F. Edmunds* (*Mr. William R. Page* was with him) for Fowler.

I. A. An act of Congress providing for any method of disposing of property drawn into adjudication in the national courts is valid, however different that method may be from the methods provided by State law. *Brine* v. *Insurance Company,* 96 U. S. 627; *Allis* v. *Insurance Company,* 97 U. S. 144. B. The rules adopted by the Circuit Court in the Northern District of Illinois are authorized by and are in conformity with the laws of the United States (Revised Statutes, sections 917 and 918), and they are in perfect harmony with section 995 Revised Statutes, requiring all moneys paid to officers of the court to be placed in some public depository. They, therefore, have the same force and effect as if they had been embodied in an act of Congress. C. The State law speaks only to the officers of the State. It cannot speak to any others. The national law speaks to the courts and officers of the United States, and as to them its voice is sovereign. D. It is admitted that Congress cannot establish a rule for the transfer of property in a State as a rule of private conduct. But it is submitted with entire confidence that Congress has power, in the establishment and regulation of the judiciary of the United States, to provide for the method and fact of the disposition of any kind of property concerning which the United States courts have (as in this case) a controversy and suit properly depending before them. E. In cases like this the court has, pursuant to the law of Congress, prescribed methods of *practice and administration merely*, to effectuate with the greatest possible safety, as between its own suitors, the very substance of the rights that the law of the State gives when cases arise in her courts. It is only a varia-

tion of formal means to the very same end.  II. A. At the time the mortgage was given, the law of the State allowed a contract rate of interest up to ten per cent.  The contract rate on the debt was nine per cent.  The State law allowed six per cent. on judgments and decrees.  It provided for sales on foreclosure decrees at public auction to the highest bidder.  It provided that redemptions from such sales by the debtor or his execution creditor might be made on paying the sum bid and paid by the purchaser, with ten per. cent. interest. · *Before the decree of foreclosure and sale* the State changed its law of interest on such redemptions, and required the payment of only eight per cent. interest.  B. There is no conceivable legal or equitable privity of contract between the purchaser at such a sale and the payee or holder of the obligation secured by the mortgage.  The purchaser *as purchaser* is an entire stranger to the contract of debt, and he would hold the land sold even if the decree should be reversed, and the whole debt claimed be held fraudulent.  It follows, therefore, that a change in the law of the interest payable to the purchaser, cannot impair the obligation of the contract of debt between the original parties.  And, as it was enacted *before* the purchaser acquired any interest, it cannot impair the obligation of any contract of his.  See *Wood* v. *Kennedy*, 19 Ind. 68; *Bank* v. *Dudley*, 2 Pet. 492.  III. If it be possible to suppose there is any doubt on the foregoing question, the redeeming creditor paid the purchaser his money with eight per cent. interest, in obedience to the express command of the sovereign power of the State, in good faith, meaning to pay all that was due.  He then, if in error, acted under a power apparently valid and under a mistake as to its validity, and while the case and the estate were still in court, he tendered the other two per cent.  In such a case, it is confidently insisted that the mistake (if there were one), whether it were of law or fact, or both, may be relieved against in the court of equity having judicial domain of the whole subject.

MR. JUSTICE HARLAN delivered the opinion of the court. After reciting the facts as above set forth, he continued:

In *Brine* v. *Insurance Company*, 96 U. S. 627, it is decided—

reversing the practice which had obtained for many years in the Circuit Court of the United States sitting in equity in Illinois— that the State law giving to a mortgagor of real estate the privilege, within twelve months after a decree of foreclosure, and to his judgment creditors within three months thereafter, of redeeming the premises, is a substantial right, and constitutes a rule of property to which the circuit court must conform.

In anticipation, however, of the difficulties which might attend exact conformity, in every case, to the local statutes, the court, in that case, said:

"It is not necessary, as has been repeatedly said in this court, that the form or mode of securing a right like this should follow precisely that prescribed by the statute. If the right is substantially preserved or secured, it may be done by such suitable methods as the flexibility of chancery proceedings will enable the court to adopt, and which are most in conformity with the practice of the court."

The decision in that case doubtless suggested to the circuit court the necessity of adopting definite rules in relation to redemptions from sales under its own decrees. Hence the rules were established which form part of the statement of facts. It will have been observed that these rules differ from the provisions of the local statutes in this, that by the former the redemption money in all cases is required to be paid to the holder of the certificate, *or to the clerk of the court,* whereas by the latter, in case of redemption by a judgment creditor, the money must be paid *to the officer having the execution.* In no case do the rules of the federal court provide for payment either to the master or other officer who conducted the decretal sale, or to the officer holding the execution of the judgment creditor.

However this difference may be regarded in the courts of Illinois when administering the statutes by which they are created, and their jurisdiction defined and limited—*Littler* v. *The People,* 43 Ill. 188; *Stone* v. *Gardner,* 20 Ib. 304; *Durley* v. *Davis,* 69 Ib. 133—we entertain no doubt of the power of the federal court to adopt its own modes or methods

for the enforcement of the right of redemption given by the local law. The substantial right given, first, to mortgagors, their representatives and grantees, and then to the judgment creditors of such mortgagors or their grantees, was to redeem the property sold within the time specified. Whether the redemption is by the one or the other class, the money is for the benefit of the purchaser at the decretal sale. When the amount going to him is *secured* by payment into the hands of some responsible officer, the object of the law, both as respects the purchaser at the decretal sale and the party redeeming, is fully attained. Redemption is effected when, by payment of the redemption money into proper hands, the purchase at the decretal sale is annulled, and the way opened for another sale. The federal court, as indicated by its rules, preferred that the money, if not paid directly to the purchaser, should, by payment through its clerk, come directly under its control for the benefit of the purchaser. Where the sale of mortgaged premises is under a decree of the federal court, and the execution of the judgment creditor seeking to redeem is from a State court, there is an evident propriety in requiring the money going to the purchaser at the decretal sale to be paid through the clerk of the federal court into its registry. The necessity for such a regulation is not so urgent where the judgment creditor's execution is from the federal court; but we perceive no objection to extending the regulation to that class of cases. Under the operation of the rules in question the records of the federal court will, in all cases, show whether the right of a purchaser to a deed has been defeated by redemption. Can it be said that the mode prescribed by the federal court for securing the money going to the purchaser impairs his substantial rights? Is he less secure than he would be if the money is paid to the officer having the execution? Clearly not. The substantial right given by the statute to the purchaser is that the redemption money be secured to him before the benefit of his purchase is taken away, and the substantial right given to the party redeeming is that the redemption become complete and effectual upon payment by him of the required amount. The particular mode in which the money is paid or

secured by the latter for the benefit of the former is not of the substance of the rights of either. The mode or manner of pay-ment belongs, so far as the federal court is concerned, to the domain of practice, the power to regulate which, in harmony with the laws of the United States and the rules of this court, as might be necessary and convenient for the administration of justice, is expressly given by statute to the circuit courts. R. S. § 918.

In the conclusions thus indicated we are only giving effect to former decisions. In *Brine* v. *Insurance Co.*, *supra*, it was, as we have seen, distinctly ruled, touching these local statutes, that the federal court—preserving substantially the right of re-demption—could pursue its own forms and modes for securing such right. The same doctrine, in effect, is announced in *Allis* v. *Insurance Co.*, 97 U. S. 144. That case arose under a statute of Minnesota which allowed the defendant in a foreclosure proceeding to redeem within twelve months after the *confir-mation* of the sale. The decree ordered the master, on making sale, to deliver to the purchaser a certificate, stating that unless the property be redeemed within twelve months after the *sale* he would be entitled to a deed. This departure from the letter of the statute was held not to be material, since substantial effect was given to the right to redeem within one year. The court said:

"In the State courts, where the practice undoubtedly is to re-port the sale at once for confirmation, the time begins to run from that confirmation. But if in the federal court the practice is to make the final confirmation and deed at the same time, it is a necessity that the time allowed for redemption shall precede the deed of confirmation. There is here a substantial recognition of the right to redeem within twelve months."

It results that the objection taken to the rules established by the court below must be overruled.

The next question to be examined is whether there could be an effectual redemption except by payment of the amount bid, with interest at ten per cent., the rate prescribed by statute at the date of the mortgage. Redemption was made upon the

basis of the amendatory act of 1879, reducing the rate of interest, in such cases, to eight per cent. The contention of the company's counsel is that that act cannot be applied without impairing the obligation of its contract. What was that contract? In what did its obligation consist? By the contract between the mortgagor and mortgagee, the former became bound to pay, within a certain time, the mortgage debt, with the stipulated interest of nine per cent. up to final decree, if one was obtained, and with six per cent. thereafter as prescribed by statute when the mortgage was given. R. S. Ill. 1874, p. 614. Certainly the obligation of *that* contract was not impaired by the act of 1879, for it did not diminish the duty of the mortgagor to pay what he agreed to pay, or shorten the period of payment, or interfere with or take away any remedy which the mortgagee had, by existing law, for the enforcement of its contract.

The statute in force when the mortgage was executed, prescribing the rate of interest which the amount paid or bid by the *purchaser* should bear, as between him and the party seeking to redeem, had no relation to the obligation of the contract between the *mortgagor and the mortgagee.* The mortgagor might, perhaps, have claimed that his statutory right to redeem could not be burdened by an *increased* rate of interest beyond that prescribed by statute at the time he executed the mortgage. But, as to the mortgagee, the obligation of the contract was fully met when it received what the mortgage and statute in force *when the mortgage was executed,* entitled it to demand. The rights of the purchaser at the decretal sale, if one was had, were not of the essence of the mortgage contract, but depended wholly upon the law in force when the sale occurred. The company ceased to be a mortgagee when its debt was merged in the decree, or at least when the sale occurred. Thenceforward its interest in the property was as purchaser, not as mortgagee. And to require it, as purchaser, to conform to the terms for the redemption of the property as prescribed by the statute at the time of purchase, does not, in any legal sense, impair the obligation of its contract as mortgagee. It assumed the position of a purchaser, subject neces-

sarily to the law then in force defining the rights of purchasers.

But it is insisted that the value of the mortgage contract was impaired by a subsequent law reducing the interest to be paid to a purchaser at decretal sale; this, upon the assumption that the probability of the debt being satisfied by the decretal sale of the property was lessened by reducing the interest which any purchaser could realize on his bid in the event of redemption. In other words, the reduction by a subsequent statute of the interest to be paid to the purchaser would, it is argued, necessarily tend to lessen the number of bidders seeking investments, and thereby injuriously affect the value of the mortgage security.

In support of this proposition counsel cite several decisions of this court in which it is ruled that the objection to a law, as impairing the obligation of a contract, does not depend upon the extent of the change it effects; that the laws in existence when a contract is made, including those which affect its validity, construction, discharge, and enforcement, enter into and form a part of it, measuring the obligation to be performed by one party, and the rights acquired by the other; and that one of the tests that a contract has been impaired is that its value has been diminished, when the Constitution prohibits any impairment at all of its obligation. *Green* v. *Biddle*, 8 Wheat. 1; *McCracken* v. *Hayward*, 2 How. 608; *Planters' Bank* v. *Sharp*, 6 ib. 301; *Edwards* v. *Kearzey*, 96 U. S. 595.

These decisions clearly have no application to the case now before the court. The laws with reference to which the parties must be assumed to have contracted, when the mortgage was executed, were those which in their direct or necessary legal operation controlled or affected the obligations of such contract. We have seen that no reduction of the rate of interest, as between the purchaser of mortgaged property at decretal sale and the party entitled to redeem, affected, or could possibly affect, the right of the insurance company to receive, or the duty of mortgagor to pay, the entire mortgage debt, with interest as stipulated in the mortgage up to the decree of sale. And the result of the sale in this case

shows that the company, as mortgagor, has received all that it was entitled to demand. The reduction of the rate of interest by the act of 1879 was by way of relief to the mortgagor and his judgment creditors, and, in no sense, an injury to the mortgagee. When that act was passed there was no person to answer the description or to claim the rights of a purchaser; consequently, no existing rights were thereby impaired. That the reduction of interest to be paid to the purchaser would lessen the probable number of bidders at the decretal sale, and thereby diminish the chances of the property bringing the mortgage debt, are plainly contingencies that might never have arisen. They could not occur unless there was a decretal sale, nor unless the mortgagee became the purchaser; and are too remote to justify the conclusion, as matter of law, that such legislation affected the value of the mortgage contract.

One other point remains to be considered. It is said that the rules of the circuit court requiring payment to the purchaser of interest at the rate of ten per cent., were never modified by any order. The court below, we suppose, proceeded upon the ground that the interest to be paid to the purchaser by the party redeeming was of the substance of the rights of both; consequently that the change, in that respect, made by the State law prior to the decretal sale, *proprio vigore*, effected a modification of the rule without a formal order. In that view we concur.

For the reasons given the decree below should be affirmed, and                                         *It is so ordered.*