STATE EX REL. THE THOMAS CRUSE SAVINGS BANK, APPELLANT, v. GILLIAM, AS SHERIFF OF JEFFERSON COUNTY, RESPONDENT.

[Submitted February 25, 1896. Decided March 16, 1896.]

MORTGAGES—*Extension of period for redemption—Constitutional law.*—Section 1235 of the Code of Civil Procedure of 1895, allowing judgment debtors one year in which to redeem, is applicable to a decretal sale of mortgaged premises thereafter made although at the time the mortgage was given the period for redemption was six months. Such extension of the period for redemption does not impair the obligation of the contract between the mortgagor and the mortgagee when the latter becomes the purchaser, because by purchasing his character as mortgagee ceases and he necessarily subjects himself to the law then in force defining the rights of purchasers. Nor is the obligation of the contract impaired by the fact that such extension may tend to reduce the number and amount of bids at the foreclosure sale, for such contingencies are too remote to justify the conclusion that such legislation affected the value of the mortgage contract.  *

*Appeal from Fifth Judicial District, Jefferson County.*

MANDAMUS to compel the issuance of a sheriff's deed at the expiration of six months from the sale of mortgaged premises under a decree of foreclosure. The writ was denied by SHOWERS, J. Affirmed.

Statement of the case by the justice delivering the opinion.

This is an appeal from the judgment of the district court rendered in favor of the respondent, upon dismissing the relator's application for a writ of *mandamus*. Relator, in the

*This decision reversed on rehearing, see post, 109.

district court, asks for the writ commanding the respondent, who was sheriff of Jefferson county, to execute and deliver to it a deed of real estate sold upon judgment foreclosing a mortgage upon the same. The petition set forth that on January 5, 1892, George S. Kennedy and wife, executed to relator, to secure an indebtedness, a mortgage upon the real estate described in the petition; that on March 5, 1895, relator commenced an action to foreclose the mortgage, in which action judgment was rendered July 2, 1895. The judicial sale took place August 3, 1895. Six months having expired on February 4, 1896, the relator demanded a deed from the respondent, the sheriff. The respondent refused to make the deed, alleging as a reason that the time for redemption was one year instead of six months, and that the deed was not due until August 3, 1896.

These facts were all set up in the petition, and were by the district court considered insufficient upon which to issue the writ of *mandamus.* The contention is based upon the fact that, when the mortgage was given, the redemption period under the law was six months. On July 1, 1895, the law went into effect which made the redemption period one year. The respondent, the sheriff, stood upon the statute as enacted, and refused to make the deed. The appellant's contention was that the statute of July 1, 1895, was unconstitutional and void as to this mortgage, in that it was enacted after the mortgage was given, and thus impaired the obligation of the contract between the mortgagor and mortgagee. (Constitution Mont., Art. III, § 11, and Constitution U. S., Art. I, § 10.)

*T. J. Walsh,* for Appellant.

Section 1235 of the Code of Civil Procedure, providing that the judgment debtor may redeem the property from the purchaser at any time within one year after the sale, is unconstitutional in so far as it denies to a mortgagee, whose mortgage was executed prior to its adoption, a right to a deed after the expiration of six months from the date of the sale. (U. S.

Constitution, § 10, Art. I; Mont. Constitution, § 11, Art. I; *Id.* § 13, Art. XV.) The identical question involved in this case came before the supreme court of the United States in *Bronson* v. *Kinzie,* 1 How. 311, upon the validity of a statute of the State of Illinois. There was no redemption statute in that state prior to the enactment of the one involved, which provided that the debtor should have a year to redeem and that the property should not be sold unless it brought two-thirds of the appraised value. Prior thereto sales were made in chancery and a deed delivered upon confirmation. The court held the statute void, declaring both of the provisions unconstitutional. See, also, *Ex parte The City Bank,* 3 How. 328; *Howard* v. *Bugbee,* 24 How. 461. The text writers uniformly regard these cases as settling the doctrine that the period of redemption from mortgage foreclosure sales cannot be extended as to mortgages in existence at the time of the change. (Black on Constitutional Prohibitions, 105; Cooley on Constitutional Limitations, 352; Wade on Retroactive Laws, 125; Sedgwick on Statutory and Constitutional Construction, 615, note on Redemption Laws and page 626; Hare Am. Constitutional Law, 699 *et seq.*) The following additional cases are selected by reason of the directness of their bearing upon the invalidity of the statute in question : *McCracken* v. *Hayward,* 2 How. 608; *Gantley* v. *Emery,* 3 How. 716; *Scobey* v. *Gibson,* 17 Ind. 572; *Maloney* v. *Fortune,* 14 Ia. 417; *Rosier* v. *Hale,* 10 Ia. 470; *Coddington* v. *Bispham,* 36 N. J. L. 574; *Baldwin* v. *Flagg,* 43 N. J. L. 495; *Allen* v. *Allen,* 95 Cal. 184; *Robards* v. *Brown,* 40 Ark. 423; *Collins* v. *Collins,* 79 Ky. 88; *Phinney* v. *Phinney,* 81 Me. 450. It is usually said in support of similar enactments, that the legislature may change the remedy. How little real substance there is to this contention is made apparent by the foregoing authorities. Even before the cases of *Bronson* v. *Kenzie,* and *Howard* v. *Bugbee* it was said in *Green* v. *Biddle,* 8 Wheat. 1: "It is no answer that the acts of Kentucky now in question are regulations of the remedy, not of the right to the lands. If these acts so change the nature and extent of the existing remedies

as materially to impair the rights and interests of the owner, they are just as much a violation of the compact as if they directly overturned his interests." See, also, *Clark* v. *Rey-burn*, 8 Wall. 322; *Walker* v. *Whitehead*, 16 Wall. 314; *Gunn* v. *Barny*, 15 Wall. 610; *Sibert* v. *Lewis*, 122 U. S. 284; *Edwards* v. *Karzey*, 96 U. S. 595; *United States* v. *Mayor*, 8 Wall. 575; *State* v. *City of N. O.*, 102 U. S. 203, and *Kring* v. *Missouri*, 107 U. S. 221; *Brine* v. *Insurance Co.*, 96 U. S. 627. The state of Kansas has furnished a variety of precedents on this interesting and important question : *Bixby* v. *Bailey*, 11 Kan. 359; *Ogden* v. *Walters*, 12 Kan. 283; *Watkins* v. *Glenn*, 40 Pac. Rep. 316; *Beverly* v. *Barnitz*, 40 Pac. Rep. 325, overruled in 42 Pac. Rep. 725. The remark in the later opinion in this case to the effect that it is desirable to so place the matter as to obtain a ruling upon the point from the supreme court of the United States, very sensibly detracts from the value of this case as a precedent.

·  *E. W. Toole*, for Respondent.

Counsel relied upon *Beverly* v. *Barnitz*, 42 Pac. Rep. 725, as decisive of the question involved in this appeal.

DE WITT, J.—As noted in the statement, the only question in this case is whether the statute, having been enacted after the mortgage was executed, and which extended the time of redemption, is constitutional. Does the statute impair the obligation of the contract, or does it reach the remedy only ? This case has been very ably briefed by learned counsel on each side. Appellant's counsel opens his discussion with the following appropriate remarks :

"This vexed question, involving the subtle distinction between the *obligation* of a contract and the *remedy* for its enforcement, after slumbering for a period, has gained prominence on account of recent legislation in some of the Western states looking to some extent to the relief of the debtor classes. The great financial distress that has led to the enactment of these laws has inclined the courts to carefully examine the de-

cisions heretofore made upon the subject, the provisions of the federal and state constitution in relation to it, and solve the question in favor of the just and humane objects sought to be accomplished, if the same comes within the domain of legitimate legislation.    Hence we keenly appreciate the desire of this honorable court to maintain in letter and spirit the salutary provisions of the fundamental law of the land, by preserving intact the obligations of a contract, and at the same time avert the disappointment of reasonable expectations that would result from declaring such laws invalid.    The important question here to be determined is whether the act of the legislative assembly of this state in *extending* the time of redemption upon the sale of the mortgaged premises impairs the obligation of the contract, or so operates upon the remedy, only, as to afford suitable and proper means for its enforcement."

It is quite true, as counsel suggests, that we are deeply sensible of the importance of the constitutional question here involved; and, furthermore, we may add, that we approached its consideration with a strong preconception against the constitutionality of the statute.

Chief Justice Martin, of the supreme court of Kansas, said, in his able discussion of a similar statute:    "From causes upon which all do not agree, and that we need not discuss, the burden of a private debt has been enormously increased of late years.    Farms valued five years ago both by borrower and lender at $3,000 or $4,000, and mortgaged for $1,000 are now knocked down under the sheriff's hammer for less than the mortgage debt, the accumulations of a lifetime being often swept away by the shrinkage, and this through no fault of the mortgagor."    (*Beverly* v. *Barnitz*, (Kan. Sup.) 42 Pac. 731.)

The commercial and political conditions mentioned by the Kansas decision did not exist in this state to any such extent as they did in Kansas, and we do not know that the considerations, which it seems, moved the Kansas legislation, influenced ours.    Our statute came in with the new Codes of 1895.    But the suggestion even of the existence of any sentiment such as that expressed in the Kansas decision causes a court to hesitate

and scrutinize closely, lest it may be that a statute passed in times of financial depression has overridden the fundamental law of the constitution; for the constitution is for good times and bad times, for adversity as well as prosperity. Entertaining such views, and having planted them in the decisions of this court upon the constitutional questions which we have heretofore considered, we approached the present matter with the apprehension that, perhaps the legislature had yielded to some sentiment of commiseration for the present debtor, and forgotten the chart and compass of the constitution. But this apprehension has been gradually and effectually dissipated by a renewed study of the cases from *Sturges* v. *Crowninshield*, 4 Wheat. 122, to *Morley* v. *Railway Co.*, 146 U. S. 162, 13 Sup. Ct. 54; and in the state courts, the cases of *State* v. *Sears* (Or.) 43 Pac. 482, and *Beverly* v. *Barnitz* (Kan. Sup.) 42 Pac. 725. The learning and reasoning upon this question has recently been thoroughly collected in the cases from Kansas and Oregon above noted.

While the question here presented is one under the state constitution, it is also a federal question, under the constitution of the United States; and, so viewing it, we are of opinion that the Kansas and Oregon decisions are sustained by the cases in the United States supreme court decided subsequent to *Bronson* v. *Kenzie*, 1 How. 311, *McCracken* v. *Hayward*, 2 How. 608, and *Howard* v. *Bugbee*, 24 How. 461. The Kansas and Oregon cases above mentioned ably review the history of this question as it has been treated in the United States decisions, especially the following cases: *Sturges* v. *Crowninshield*, 4 Wheat. 122; *Bronson* v. *Kinzie*, 1 How. 311; *Terry* v. *Anderson*, 95 U. S. 628, *Antoni* v. *Greenhow*, 107 U. S. 769, 2 Sup. Ct. 91; *Insurance Co.* v. *Cushman*, 108 U. S. 51, 2 Sup. Ct. 236; *Morley* v. *Railway Co.*, 146 U. S. 162, 13 Sup. Ct. 54; *Ogden* v. *Sanders*, 12 Wheat. 215; *Louisiana* v. *New Orleans*, 102 U. S. 203; *Curtis* v. *Whitney*, 13 Wall. 68; *Edwards* v. *Kearzey*, 96 U. S. 595; *Seibert* v. *Lewis*, 122 U. S. 284, 7 Sup. Ct. 1190; *Clark* v. *Rayburn*, 8 Wall. 318; *Von Hoffman* v. *City of Quincy*, 4 Wall. 535; *Teal* v. *Walker*, 111 U. S. 242, 4 Sup. Ct. 420

Cordially concurring, as we do, with the decisions of the Kansas and Oregon courts, and finding our reasons for such concurrence in the same United States supreme court cases discussed by them, and they having so thoroughly occupied the field before we reached it, it would seem, perhaps, to be an affectation of original research to write at much length in this opinion. But the importance of the case probably demands some setting forth of our reasons for holding that the United States supreme court decisions are to the effect that our law of 1895 is not unconstitutional.

While our constitution forbids the legislature from passing a law impairing the obligation of contracts, the same inhibition is found in the constitution of the United States; and therefore the supreme court of the United States is the court of final resort upon this quesion. That being true, we now base our decision upon the doctrines as announced by the United States supreme court since *Bronson* v. *Kinzie* and some of the cases immediately following it.

Passing that early landmark in the history of the construction of article 1, § 10, Const. U. S., to-wit: *Sturges* v. *Crowninshield* (1819) 4 Wheat. 122, in which Chief Justice Marshall, as said by Chief Justice Martin of Kansas, "well-nigh exhausted the subject," we encounter *Bronson* v. *Kinzie*, (1843) 1 How. 311, that much quoted, canvassed, approved, and criticised case. There were two points in that case, but there is only one with which we have now to do. It was there held that a law passed subsequent to the execution of the mortgage in question, which law gave the mortgagor twelve months in which to redeem, was void under article 1, § 10, of the constitution of the United States. The case came from the state of Illinois, where the common-law view of the nature of a mortgage fully obtained. Upon this point, Chief Justice Taney, in rendering the decision, said: "We proceed to apply these principles to the case before us. According to the long-settled rules of law and equity in all of the states whose jurisprudence has been modeled upon the principles of the common law, the legal title to the premises in question vested in the complainant, upon

the failure of the mortgagor to comply with the conditions contained in the proviso; and at law he had a right to sue for and recover the land itself.'' (*Bronson* v. *Kinzie*, 1 How. 318.)

There was nothing new in *McCracken* v. *Hayward*, 2 How. 608, or *Howard* v. *Bugbee*, 24 How. 461. They were decided upon the authority of *Bronson* v. *Kinzie*. But the common-law view of a mortgage no longer obtains in most of the states of the Union. As shown in *Beverly* v. *Barnitz* and *State* v. *Sears*, *supra*, that idea is ''cut up by the roots;'' and with us, in these days, a mortgage is simply a security for a debt. It is so in Montana. Therefore, whatever reason, if any, *Bronson* v. *Kinzie* obtains from the fact that the legal title to the real estate vested in the mortgagee upon failure of the mortgagor, disappears from the case when it is sought to apply it as an authority upon the modern commercial view that a mortgage is simply a security. Therefore, the contract between mortgagor and mortgagee, before us for examination, was not in any way a conveyance of the real estate, but was simply a contract that the mortgagor would pay a certain sum of money. The mortgage was given as security for such payment. The payment was not made. The foreclosure of the security was had. The relator here bought on foreclosure sale. The relator then ceased to be a mortgagee, and became a purchaser, and the debt was extinguished in whole, the sale being for a sum sufficient to pay the whole debt. Then, and then only, did the relator approach the relations of owner of the real estate. Never before did it have anything like a title. Theretofore it was simply a creditor of the mortgagor, having a security upon the mortgagor's real estate. By purchase at the foreclosure sale, it first came into proprietary relations to the real estate; and at the same time its position as mortgagee ceased wholly, and its position as creditor as well. Therefore, we must proceed to look at the relator, formerly a mortgagee, as now a purchaser, and ascertain whether a law had been passed impairing the obligation of the contract of purchase. We are satisfied that the decisions of the United States supreme

court hold that the obligation of that contract was not thus impaired. The law was passed before relator purchased, and he purchased under the law of 1895, existing upon the day of his purchase. Upon this subject the opinion in the Kansas case above cited, says: "The act of 1893 does not operate upon the rights of the mortgagee until his claim as such has been extinguished, either wholly or to the full extent of the proceeds of the sale of the mortgaged property. The mortgagor, it is true, may redeem the land within a certain time, by payment of the sale price, and interest thereon, but this is a matter wholly between him and the purchaser. If the mortgagee or judgment creditor has deemed it best to become the purchaser, and thus voluntarily change his relation, it is difficult to see how he has any just cause to complain. By the mortgage contract, the real estate was pledged for the payment of the debt, subject to the equity of the redemption. The state, by its proper officer, has, at his instance, sold the property for its payment; and, after he gets the proceeds of of the sale, he has no further claim upon the property, although he may proceed by general execution to obtain any balance due by seizure and sale of other property." (*Beverly* v. *Barnitz* (Kan. Sup. 42 Pac. 729.)

See, also, the following remarks in the Oregon case : "The relator obtained no title or interest in the mortgaged premises by its contract, but only a lien thereon, and a right to subject the property to sale to satisfy its claim; and this right has in no way been altered, abridged, or postponed by the act of 1895. How can it be claimed, then, that this act impairs any of the obligations of the contract? It is true, 'the law which binds the parties to perform their agreement' forms part of the obligations of the contract; but the act of 1895 does not postpone or lessen the duty of performance by the mortgagor. It does not diminish his duty to pay his debt at the time and in the manner agreed upon, or take away or interfere with any of the mortgagee's remedies to enforce its lien by subjecting the mortgaged premises to sale. The statute existing at the time the mortgage was given, prescribing the time in

which the mortgagor shall redeem from the purchaser at a foreclosure sale, if one should be made, had no relation whatever to the contract between the mortgagor and mortgagee. The purchaser's right depends upon the law in force at the time of the sale, and why shall he be permitted to appeal to the contract between the debtor and creditor? He is not a party or privy to such contract in any sense; and it does not alter the case that the purchaser and mortgagee are one and the same person. The relator ceased to be a mortgagee when the sale occurred. Thenceforward its interest in the property was as purchaser, and not as mortgagee; and to require it, as such purchaser, to confirm to the law in force when the purchase was made, does not in any way impair the obligations of the mortgage contract." (*State* v. *Sears* (Or.) 43 Pac. 485.)

But as this is finally a federal question, the decisions of the United States supreme court are more important as authority. We therefore turn to *Insurance Co.* v. *Cushman,* 108 U. S. 51, 2 Sup. Ct. 236. In that case the court had under consideration a statute which reduced the rate of interest on redemption of the real estate sold on a mortgage foreclosure from ten per cent. to eight per cent. Mr. Justice Harlan, rendering the opinion said : "The statute in force when the mortgage was executed, prescribing the rate of interest which the amount paid or bid by the purchaser should bear, as between him and the party seeking to redeem, had no relation to the obligation of the contract between the mortgagor and the mortgagee. The mortgagor might, perhaps, have claimed that his statutory right to redeem could not be burdened by an increased rate of interest beyond that prescribed by statute at the time he executed the mortgage. But, as to the mortgagee, the obligation of the contract was fully met when it received what the mortgage and statute in force when the mortgage was executed entitled it to demand. The rights of the purchaser at the decretal sale, if one was had, were not of the essence of the mortgage contract, but depended wholly upon the law in force when the sale occurred. The company ceased to be a mort-

gagee when its debt was merged in the decree, or, at least, when the sale occurred. Thenceforward its interest in the property was as purchaser, not as mortgagee. And to require it, as purchaser, to conform to the terms for the redemption of the property as prescribed by the statute at the time of purchase, does not, in any legal sense, impair the obligation of its contract as mortgagee. It assumed the position of a purchaser, subject, necessarily, to the law then in force defining the rights of purchasers.''

A kindred subject is treated later in the United States supreme court, as to which Chief Justice Martin, of Kansas, says : '' In *Morley* v. *Railway Co.*, 146 U. S. 162, 13 Sup. Ct. 54, it was held that the state was not forbidden by the clause of the federal constitution under consideration from legislating, within its discretion, to reduce the rate of interest upon judgments previously obtained in its courts, the judgment creditor having no contract whatever in that respect with the judgment debtor. The court held that the state law regulating the iate of interest on judgments formed no part of the contract.'' (*Beverly* v. *Barnitz* (Kan. Sup.) 42 Pac. 727.)

The United States supreme court decision in *Insurance Co.* v. *Cushman* seems to us to be conclusive. It holds that, when the relator became a purchaser, it was like any other purchaser, and had been divorced from its character as mortgagee, and must be treated as a purchaser solely; and, as such purchaser, the law does not impair the obligation of any contract which it as such had. That the whole history of decision in the United States supreme court since the time of *Bronson* v. *Kinzie* has been to the effect that the law which we are now considering does not impair the obligation of the contract between the mortgagor and mortgagee when the latter becomes the purchaser is ably shown by Mr. Chief Justice Martin in his review of the history of the question in the United States supreme court. After reviewing in detail and quoting from the decisions of that court (listed above in this opinion) which have treated a large number of statutes, and held them not to be within the inhibition of article 1, § 10, of the constitution

of the United States, the learned chief justice of Kansas makes the following able summary of the position of the United States supreme court upon this subject :

"If a state legislature may totally abolish imprisonment of the debtor as a means of enforcing payment; if it may shorten the statutes of limitation; if it may reasonably extend and enlarge exemptions of property from sale for the payment of debts; if, where coupons are by law made receivable in payment of taxes, it may require such payment in the first instance in cash, to be afterwards refunded, and the coupons taken up; if it may reduce the rates of interest on redemption from decretal sales; if it may lessen the interest on former judgments; if it may require the holder of a tax-sale certificate to give three months' notice of the time when a tax deed will be applied for; if it may require transcripts of judgments against a particular city to be filed in a certain office, as a prerequisite to payment, and divest the courts of the power to grant remedies in force when the judgments were rendered; if it may reduce the terms of court, in number and duration; if it may amend the laws as to attachments, garnishments, and receivers so as to take away causes therefor which were before sufficient; if, in short, 'it may regulate at pleasure the modes of proceeding' in the courts, and all this as to existing obligations,—it is difficult to frame a process of reasoning which would forbid it from so regulating the procedure upon the foreclosure of mortgages as to define and make more certain the indefinite estate impliedly reserved by every mortgagor of real property, and called into active existence only by the foreclosure, and which indefinite estate is extended by the federal courts of equity for six months in the first instance, and afterwards, 'once or oftener,' in the discretion of the chancellor, according to the circumstances of the case. Even if the statute in question should impair the remedy formerly grantable upon a foreclosure, yet it should not for this reason be held invalid, for there is no constitutional inhibition against an impairment of the general remedies for the enforcement of broken contracts; and each and every of special examples just

cited is an instance of the impairment or abolition of a remedy allowable and in force when the obligation was incurred. Upon the whole, it does not appear that any judgment or decision of the supreme court of the United States requires this court to hold said chapter 109 unconstitutional, whatever may have been remarked by judges in delivering their opinions; for it is quite impossible to harmonize all that they have said, although the judgments or decisions may not be in conflict. Even doubt of the constitutionality of said chapter is not sufficient to warrant its judicial condemnation, especially by this court. In such case it seems better to leave such condemnation to the final arbiter,—supreme court of the Union." (*Beverly* v. *Barnitz* (Kan. Sup.) 42 Pac. 732.)

It thus appears to us that, if the precise question now before us should come to the United States supreme court for decision, the court would, by force of its own prior decisions, hold that this law under consideration is not unconstitutional. That seems to us to be settled by the later cases, notwithstanding the case of *Bronson* v. *Kinzie*. Indeed, we are wholly unable to distinguish *Bronson* v. *Kinzie* from *Insurance Co.* v. *Cushman*, so that both decisions can stand together. We do not understand why extending a redemption period and reducing the rate of interest upon redemption are not exactly alike as to the impairing or not impairing the obligation of the mortgage contract. We venture the suggestion that, if one statute impairs the obligation, the other does also. The United States supreme court, in the later case of *Insurance Co.* v. *Cushman*, does not attempt to distinguish its decision from the earlier decision in the case of *Bronson* v. *Kinzie*. In fact, the opinion in the later case does not mention the earlier case. We can reach no other conclusion than that *Insurance Co.* v. *Cushman* overrules the principle of *Bronson* v. *Kinzie*. If our view in this respect is correct, then the force of the *Insurance Co.* v. *Cushman* case is the stronger as a present authority, by reason of the existence of the modern view that a mortgage is security only. Therefore, under the views promulgated by the decisions of the United States supreme court,

the statute which we are considering does not impair the obligation of the contract, unless it be upon one other ground which we have not before mentioned, and which we will now examine.

It is suggested that the obligation of the contract is impaired, in that the extending of the time for redemption would tend to reduce the number of bidders and the amount of bids at the mortgage foreclosure sale. This contention of the relator was decided adversely to him in the Kansas and Oregon cases above discussed. But, without quoting from them, we will again seek the authority which must be final with us on this question. The same contention was made in *Insurance Co.* v. *Cushman*, and was disposed of by Mr. Justice Harlan in the following language:

"But it is insisted that the value of the mortgage contract was impaired by a subsequent law reducing the interest to be paid to a purchaser at decretal sale; this upon the assumption that the probability of the debt being satisfied by the decretal sale of the property was lessened by reducing the interest which any purchaser could realize on his bid in the event of redemption. In other words, the reduction by a subsequent statute of the interest to be paid to the purchaser would, it is argued, necessarily tend to lessen the number of bidders seeking investments, and thereby injuriously affect the value of the mortgage security. In support of this proposition counsel cites several decisions of this court in which it is ruled that the objection to a law, as impairing the obligation of a contract, does not depend upon the extent of the change it effects; that the laws in existence when a contract is made, including those which affect its validity, construction, discharge and enforcement, enter into and form a part of it, measuring the obligation to be performed by one party, and the rights acquired by the other; and that one of the tests that a contract has been impaired is that its value has been diminished, when the constitution prohibits any impairment of all of its obligation. (*Green* v. *Biddle*, 8 Wheat. 1; *McCracken* v. *Hayward*, 2 How. 608; *Bank* v. *Sharp*, 6 How. 301; *Edwards* v. *Kearney*, 96 U. S. 595.)

These decisions clearly have no application to the case now before the court. The laws with reference to which the parties must be assumed to have contracted when the mortgage was executed, were those which, in their direct or necessary legal operation, controlled or affected the obligations of such contract. We have seen that no reduction of the rate of interest, as between the purchaser of the mortgaged property at decretal sale and the party entitled to redeem, affected, or could possibly affect, the right of the insurance company to receive, or the duty of mortgagor to pay, the entire mortgage debts, with interest as stipulated in the mortgage up to the decree of sale; and the result of the sale in this case shows that the company, as mortgagor, has received all that it was entitled to demand. The reduction of the rate of interest by the act of 1879 was by way of relief to the mortgagor and his judgment creditors, and in no sense an injury to the mortgagee. When that act was passed, there was no person to answer the description, or to claim the rights of a purchaser. Consequently, no existing rights were thereby impaired. That the reduction of interest to be paid to the purchaser would lessen the probable number of bidders at the decretal sale, and thereby diminish the chances of the property bringing the mortgage debt, are plainly contingencies that might never have arisen. They could not occur unless there was a decretal sale, nor unless the mortgagee became the purchaser, and are too remote to justify the conclusion, as matter of law, that such legislation affected the value of the mortgage contract." (*Connecticut M. I. Ins. Co.* v. *Cushman*, 108 U. S. 65, 2 Sup. Ct. 236.)

Having thus satisfied ourselves that the question before us is practically settled against the relator by the decisions of the United States supreme court, and that *Bronson* v. *Kenzie* has by later decisions lost all of its authority upon the question at bar, we shall affirm the judgment of the district court in dismissing the petition for a writ of *mandamus*, and shall hold, directly upon the merits, that the sheriff's deed in this case can be demanded only at the expiration of one year after the sale. Code Civ. Proc. 1895, § 1235.

We have not omitted to examine the case of *Wilder* v. *Campbell*, in the supreme court of Idaho, January 31, 1896 (43 Pac. 677). That case took a view the opposite to that which we here hold. There is nothing in the Idaho case to cause us to change our views. In fact, we are of opinion that this important question was not fully or fairly presented to the Idaho court. The opinion seems to approve *Bronson* v. *Kinzie*, but does not mention *Insurance Co.* v. *Cushman*, or *Morley* v. *Railway Co.* It also cites with approval *Watkins* v. *Glenn* (Kan. Sup.) 40 Pac. 316, but does not mention the overruling of that case in *Beverly* v. *Barnitz* (Kan. Sup.) 42 Pac. 725.

The judgment is affirmed.

*Affirmed.*

HUNT, J. concurs.

## ON REHEARING.

[Decided July 13, 1896.]

DE WITT, J.—Our opinion was delivered and the decision made in this case on March 16th, 1896. At that time we were informed that the case of *Barnitz* v. *Beverly* had been appealed to the United States supreme court. We, therefore, required the clerk of this court to hold the remittitur. The published report of *Barnitz* v. *Beverly* in the United States supreme court has recently reached us, and we granted a rehearing in this case of our own motion.

The United States supreme court in *Barnitz* v. *Beverly* reversed the Kansas supreme court, 16 S. C. Rep. page 1042, and also as well overruled, on principle, our decision in this case at bar, rendered on March 16th, last. We, having decided this case on a federal question solely, and our decision being in accord, on principle, with the United States supreme court, at the date of its rendition and our decision of the fed-

eral question being since directly overruled by the supreme court, shall now place ourselves in accord with the latest decision of the superior tribunal upon this subject.    Therefore, the judgment of this court, instead of remaining as rendered on March 16th will now be that the judgment of the district court be reversed, and the district court be directed to issue the writ of *mandamus* as prayed for.

*Reversed.*

HUNT, J., concurs.

PEMBERTON, C. J., not sitting.