UNITED STATES MORTGAGE COMPANY ET AL. *v.* MARY E. MATTHEWS ET AL.

[No. 50, April Term, 1934.]

384

*Decided July 6th, 1934.*

The cause was argued before BOND, C.J., URNER, ADKINS, OFFUTT, DIGGES, PARKE, and SLOAN, JJ.

*William L. Marbury, Jr.,* and *James Thomas,* with

whom were *Knapp, Tucker & Thomas* on the brief, for the appellants.

*J. Calvin Carney* and *Frederick H. Hennighausen,* for the appellees.

DIGGES, J., delivered the opinion of the Court.

On July 30th, 1925, Walter H. Worner, unmarried, executed to the Mortgage Gurantee Company, of Baltimore City, a mortgage on property located in Baltimore City known as No. 1339 Patapsco Avenue, to secure a debt of $3,000 due by him to the mortgagee. On July 30th, 1932, the Mortgage Guarantee Company assigned to Mary E. Matthews and John Matthews an undivided 500/2950 share, equivalent to $500, in the Worner mortgage, $50 having been paid on the principal at the time of the assignment; which $500 interest in the mortgage thereby assigned was due and payable on July 30th, 1935. The mortgage contained the usual covenant for the payment of the principal debt and interest, for the payment of all taxes and assessments, and for keeping the property insured for the benefit of the mortgagee. The mortgage also contained the following language:

And the said mortgagor doth hereby declare his assent to the passing of a decree by the Circuit Court of Baltimore City or the Circuit Court No. 2 of Baltimore City for a sale of the property hereby mortgaged in accordance with Sections 720 to 732, inclusive, of Chapter 123 of the laws of Maryland passed at the January session 1898 or any amendments or additions thereto. And upon any default in the terms of this mortgage a sale may be made by the said mortgagee, its successors or assigns, or by its or their attorney under article 66, secs. 6 to 10, inclusive, of the Maryland Code of 1904, Public General Laws, or any other general or local laws of the State of Maryland relating to mortgages. And it is agreed that upon any sale of said property under this mortgage, whether under the above

assent to a decree or under the above power of sale, the proceeds of sale shall be applied as follows, to wit, first, to the payment of all expenses incident to said sale, including a counsel fee of twenty-five dollars for conducting the proceedings if without contest, but if legal services be rendered to the mortgagee or its assignee or to the trustee or party selling under the power of sale in connection with any contested matter in the proceedings, then such other counsel fees and expenses shall be allowed out of the proceeds of sale as the Court may deem proper, and also a commission to the party making said sale equal to the commission allowed trustees for making sales of property under decree of a Court of Equity in Maryland; second, to the payment of all claims of the mortgagee, its successors or assigns hereunder, whether the same shall have then matured or not; and third, the balance if any to the said mortgagor, his heirs, executors, administrators or assigns."

Sections 6 to 10 of article 66 of the Code of 1904, referred to in the mortgage, are now the same sections of the same article of the Code of 1924.

Section 720 of chapter 123 of the Acts of 1898, now codified as section 720 of article 4 of the Code of Public Local Laws, title "Baltimore City," subtitle "Mortgages," was in force at the date of the execution of the mortgage, and reads as follows: "In all cases of conveyances of lands or hereditaments or of chattels real, or goods and chattels personal, situate in the said city, wherein the mortgagor shall declare his assent to the passing of a decree for the sale of the same, it shall be lawful for the mortgagee or his assigns at any time after filing the same to be recorded, to submit to either of the Circuit Courts of Baltimore City the said conveyances or copies thereof, under seal of the Superior Court; and the Circuit Court to which the same is so submitted, may thereupon forthwith decree that the mortgaged premises shall

be sold at any one of the periods limited in said conveyances for the forfeiture of said mortgages or limited for a default of the mortgagors, and on such terms of sale as to the said court may seem proper, and shall appoint by said decree a trustee or trustees for making such sale, and shall require bond and security for the performance of the trust as is usual in cases of sales of mortgaged premises."

This section was originally enacted by chapter 181 of the Acts of 1833, and subsequently amended by chapter 249 of the Acts of 1836 and chapter 197 of the Acts of 1890. It was also designated in the Code of Public Local Laws of 1860 as article 4, sec. 782, and in the Code of Public Local Laws of 1888 as article 4, sec. 692. There has been no amendment since the enactment of chapter 123 of the Acts of 1898, until the passage of chapter 56 of the Extra Session of the General Assembly of 1933. By that chapter (section 1) it was enacted: "That a new section be and the same is hereby added to Article 4 of the Code of Public Local Laws of Maryland (1930 Edition), title 'Baltimore City,' sub-title 'Mortgages,' said new section to be known as 720A and to follow immediately after Section 720, and to read as follows: 720A. In all cases submitted to either of the Circuit Courts of Baltimore City for the passage of a decree as provided for in Section 720 aforesaid, no such decree shall hereafter be passed during the period of emergency hereinafter declared, unless such application is made or concurred in by the record holders of not less than 25% of the entire unpaid mortgage debt, it being hereby declared to be the intent of this Section during the period this Section is effective, that the holder or holders of a fractional interest in an entire mortgage debt of less than 25% of the entire interest, shall not have recourse to the summary and exparte remedies given under Section 720." Section 2 of chapter 56 provides: "That the period of the emergency hereinbefore declared as a matter of Legislative determination, shall be the period of time from the date this Act takes effect to the first day of June, 1935." By

section 3 of this chapter the law was declared to be an emergency one and necessary for the immediate preservation of the public health and safety, and being passed by affirmative vote of the necessary three-fifths of all the members elected to each of the two Houses of the General Assembly, should take effect from the date of its passage. Chapter 56 was approved and became effective December 15th, 1933.

The case of *Richardson v. Owings*, 86 Md. 663, 39 A. 100, construed section 720 of chapter 123 of the Acts of 1898, and held that the holder of a fractional part of a mortgage on property in Baltimore City was entitled to the benefits of and to proceed under the provisions of section 720 as it then stood. The date of that decision was January 4th, 1898, and the effect of it was to hold that the word "mortgagee" therein used applied to any fractional holder of such a mortgage, as fully as where the whole mortgage was held by one individual. That decision permitted any holder of a fractional part of a mortgage, without regard to the amount of such holding or interest, to apply for and obtain a decree in accordance with the provisions of section 720.

It will thus be seen that at the time of the execution of the mortgage here in question, as also at the time of the assignment to Mary E. and John Matthews, the appellees, by which they became the holders of 500/2950 of said mortgage, they had the right to apply for and receive a decree for the sale of said property, without regard to whether or not at that time there had been a default in the mortgage. While they could obtain such decree and have a trustee appointed to make sale, the property could not be sold until a default had occurred.

On December 22nd, 1933, seven days after chapter 56 of the Acts of 1933 (Ex. Sess.) became effective, the appellees petitioned the Circuit Court No. 2 of Baltimore City for a decree and appointment of a trustee to make sale of the property, in which petition they alleged that the mortgage was in default, in that the covenant to pay the taxes had not been kept, by reason of the taxes for

the years 1932 and 1933 not being paid. Accompanying the petition as exhibits, there were filed the mortgage and assignment to the appellees of their fractional interest.

Following the filing of the petition, the appellant United States Mortgage Company, the then owner of the equity of redemption in the property described in the mortgage, and the Mortgage Guarantee Company, the other appellant, the holder of record or the duly authorized representative of approximately eighty-three per cent. of the unpaid mortgage debt secured by the mortgage, upon their application and under an order of court, were permitted to intervene in the proceeding as respondents, and answered the petition, opposing the granting of a decree as prayed for therein, and setting up the provisions of the act of 1933, chapter 56, as a reason why the petition of the appellees should not be granted. Testimony was taken in open court, and after argument a decree was passed on March 22nd, 1934, wherein it was ordered that the mortgaged property in the proceedings mentioned be sold at or after any one of the periods limited in the mortgage filed for the foreclosure of said mortgage, and appointing Clarence H. Tucker as trustee to make said sale, requiring bond of the trustee, and particularly describing the manner and mode of procedure in making the sale. From this decree the appeal here was taken.

The appellees contended that the Act of the Extra Session of 1933, chapter 56, was unconstitutional and void, as being in conflict with section 10 of article 1 of the Constitution of the United States, which prohibits the state from passing any law impairing the obligation of a contract; that said chapter 56 denies to the appellees the equal protection of the laws, guaranteed by the Fourteenth Amendment of the Constitution of the United States; and that the said act contravenes the Declaration of Rights of Maryland, in that it deprives the appellees of their property contrary to the law of the land within the meaning of articles 19 and 23 and 44 of the Declara-

tion of Rights. The appellants deny those contentions, and in addition to that denial contend that, by the language of the mortgage, the mortgagor assented to the sale of the property under and in accordance with the provisions of sections 720 to 732, inclusive, of chapter 123 of the Acts of 1898 (now codified as sections 720 to 732 of article 4 of the Code of Public Local Laws 1930, title "Baltimore City," subtitle "Mortgages"), *or any amendments or additions thereto;* which meant that the mortgagor consented to having the proceedings for a consent decree governed by any future amendments or additions to those sections which should become effective before the application for the consent decree.

While it is true that, at the time this language was incorporated in the mortgage, there had been no explicit amendment or addition to those sections of the law providing for consent decrees, the argument is made that the language was intended to apply to any future amendments or additions. We are unwilling to give sanction to such a construction, and we hold that the intention of the parties in employing that language embraced only such amendments or additions as had been made prior to the execution of the mortgage. A contrary holding would mean that a complete destruction of that remedy was contemplated.

Coming now to the contention that the said chapter 56 of the Acts of 1933 (Ex. Sess.) is unconstitutional because in violation of the Federal Constitution's prohibition against states passing laws violating the obligation of contracts: There is no doubt of the power of the state to change the remedy, or the mode of enforcing the right contained in the contract, provided the remedy which is left, or the method substituted therefor, be substantially equivalent in coercive force to that provided by the law when the obligation was contracted. Or, as stated in *New Orleans C. & L. R. Co. v. Louisiana,* 157 U. S. 219, 15 S. Ct. 581, 583, 39 L. Ed. 679: "Modes of procedure in the courts of a state are so far within its control that a particular remedy existing at the time of the making

of a contract may be abrogated altogether, without impairing the obligation of the contract, if another and equally adequate remedy for the enforcement of that obligation remains, or is substituted for the one taken away." See *Bronson v. Kinzie*, 1 How. 311, 315, 11 L. Ed. 143; *Von Hoffman v. Quincy*, 4 Wall, 535, 552, 18 L. Ed. 403; *Conn. M. Life Ins. Co. v. Cushman*, 108 U. S. 51, 64, 2 S. Ct. 236, 27 L. Ed. 648; *McGahey v. Virginia*, 135 U. S. 662, 685, 693, 10 S. Ct. 972, 34 L. Ed. 304; *Home Bldg. Assn. v. Blaisdell*, 290 U. S. 398, 54 S. Ct. 231, 78 L. Ed. 413, 88 A. L. R. 1481, and cases there cited in note 13; *State, use of Isaac, v. Jones*, 21 Md. 432; *Madigan v. Workingmen's Bldg. Assn.*, 73 Md. 317, 20 A. 1069; *Wilson v. Simon*, 91 Md. 1, 45 A. 1022; *Balto. & O. R. Co. v. Maughlin*, 153 Md. 367, 138 A. 334. "The obligation may be impaired by a change in the remedy in force at the time when the contract was entered into. If the subsequent law subtracts from the effectiveness of the remedy and provides no substitute substantially equivalent to the former remedy, it is obnoxious to the contract clause. The obligee is not entitled to a remedy of the same form as that in force when the obligation was contracted. The form of the remedy does not enter into his right, which inheres merely in the effectiveness of his remedy, but he is entitled to some remedy, and that remedy must be substantially equivalent in coercive force to that provided by law when the obligation was contracted." 15 *Am. & Eng. Encyc. of Law* (2nd Ed.) 1052. "It is also generally conceded that the State, under its general power to change and alter remedies, may vary the times of holding courts, shift jurisprudence from one to another, create new courts and abolish old ones without in any wise impairing the obligation of contracts." 6 *R. C. L.* 364.

Applying this settled law to the facts of the case now before us, let us ascertain if those facts show a change, modification, or abolition of the remedies available to the mortgagees at the time the mortgage was executed, such as would leave them with no remedy at all, or with a rem-

edy which is not substantially equivalent in coercive force to that provided by the law when the obligation was contracted. This record discloses that, at the time the mortgage was executed, certain remedies were available to the mortgagees for the enforcement of the rights and obligations contained in the contract. These consisted, perhaps, of five distinct modes of procedure to enable the mortgagee to enforce his right of payment against the property mortgaged: (a) Strict foreclosure; (b) foreclosure by formal proceedings; (c) foreclosure under a power to sell; (d) foreclosure under an assent to decree; and (e) sale under a breach of condition or happening of a future event.

The mortgage itself contains two methods of procedure, one under the provisions of the consent decree statute, and the other under a power contained in the mortgage as prescribed and set out in article 66, secs. 6 to 10, inclusive, of the Code of Public General Laws. It is clearly apparent that chapter 56 of the Acts of 1933 (Ex. Sess.) either abrogated entirely or seriously affected the appellees' right to proceed under the provisions of the consent decree statute, because before its passage the appellees, holding a fractional part of the mortgage, were entitled to apply for and obtain a decree for sale without the co-operation of the other holders of portions of the mortgage; whereas by chapter 56 they could only exercise this right in conjunction with a sufficient number of the other fractional holders to amount to twenty-five per cent. of the unpaid portion of the mortgage debt. In other words, before the act they could proceed alone, while after the act they must obtain the consent of those whose combined interest would amount to at least twenty-five per cent. of the mortgage debt.

Chapter 57 of the Acts of the Extra Session of 1933, approved and becoming effective on December 15th, 1933, the same date as the effective date of chapter 56 hereinbefore discussed, modified the summary remedy as contained in article 66, secs. 6 to 10, inclusive, of the Code of Public General Laws (providing for the sale of

mortgaged property under a power contained in the mortgage), so as to preclude the use of the remedy therein provided to all persons holding less than twenty-five per cent. of the entire unpaid principal debt; such prohibition against use of such remedy being for the period between the effective date of the act and the 1st day of June, 1935, which period is declared to be the period of emergency. It is thus evident that the express purpose of the Legislature in passing chapters 56 and 57 of the Acts of 1933, Extra Session, and which is so declared in the preamble to the two acts, was to remove and take away from all mortgagees, similarly situated as the appellees, the right of a summary proceeding for the sale of the property mortgaged. In other words, before the enactment of said chapters 56 and 57, under the express terms of the contract contained in the mortgage, the appellees could resort to either one of two summary proceedings for the sale of the mortgaged property for the payment of the mortgage debt, in case of a default in any of the covenants of the mortgage, and had the absolute legal right to such remedies without the co-operation or consent of any of the other fractional holders of the mortgage; whereas, after the passage of said chapters 56 and 57, all summary remedies by sale of the property were denied, unless and until at least twenty-five per cent. in interest of the unpaid mortgage debt should join in the foreclosure proceeding.

The question then is: Were the remedies contracted for in the mortgage, and which were in accordance with the law as it stood at the time of the execution of the mortgage and the assignment of a portion thereof to the appellees, so modified or changed as to amount to an impairment of the obligation of the contract; and, if so, are the remaining remedies open to the appellees as effective for the enforcement of their rights as the ones abrogated? The two remedies denied to the appellees are so interwoven with the right contracted for that the abolition of the remedy impairs the right, and is repugnant to the constitutional provisions prohibiting the states from

passing legislation impairing the obligation of a contract. The abstract statement of a right embodied in a contract, unaccompanied by an adequate legal or equitable remedy for the enforcement of such right, is of no benefit to the parties. When at the inception of the contract there are adequate summary remedies provided by law for the enforcement of the right and subsequently these remedies are so changed, modified, or abrogated as to take away the remedy entirely, or leave remaining a remedy which is not of equivalent coercive force, then such change of remedy so affects the right as to render such legislation obnoxious to the constitutional provision. Cases *supra.*

In the case under consideration, the appellees, at the time they became holders of a portion of the mortgage now owned by them, were entitled by the terms of the contract to pursue the remedies specified in the mortgage for the enforcement of the right of payment. Both of the remedies contracted for provided for a summary method of procedure, and must be held to have been an inducement to purchase the fractional part of the mortgage which was sold to them. It requires no argument to convince us that the right to proceed to the collection of the money due the appellees upon default, without the consent or co-operation of any other person interested in the mortgage, was an extremely valuable portion of the contract, and doubtless was no small part of the consideration which induced the appellees to purchase the interest now held by them. If, then, all of such remedies are taken away, and there remains a totally inadequate remedy, as compared to those taken away, it seems clear that an attempt to make such legislation applicable to pre-existing mortgages is unconstitutional and void.

The constitutionality of chapter 56 is next attacked on the ground that it is special legislation and denies the appellees the equal protection of the laws, contrary to the Fourteenth Amendment of the Constitution of the United States and to similar provisions of the Constitution and Declaration of Rights of Maryland. In other words, it is claimed by the appellees that this legislation is "class

legislation," a term often carelessly used, sometimes called "local" or "private" legislation, consisting of those laws which are limited in their operation to certain persons or classes of persons, natural or artificial, or to certain districts of the territory or state. The provisions of the Fourteenth Amendment of the Federal Constitution have been construed practically with uniformity to grant to all persons equality before the law, in the sense that that constitutional provision renders void all state statutes which make any unreasonable or arbitrary discrimination between different persons or classes of persons. Those portions of the Maryland Constitution and Declaration of Rights relied on afford protection to its citizens against unreasonable or arbitrary discrimination in like manner and to the same extent as the Fourteenth Amendment of the Federal Constitution.

These constitutional provisions, national and state, prohibit the state legislatures from making any clearly unreasonable and arbitrary classification, which would result, if allowed, in discrimination beneficial or detrimental to an individual or class, and which did not likewise apply to all other individuals or classes under like circumstances and conditions. Courts and authorities on the subject have no difficulty in stating the general principle, but it is impossible to harmonize the decisions in the application of the principle to the particular facts of a given case. The question, therefore, on this phase of the case is: Was the classification made by the Legislature a reasonable one, and having a reasonable relation to the legislative objective, not arbitrary and capricious? With reference to the state of an emergency which is declared by the Legislature to exist, in the preamble to the acts under consideration, we think it wise to observe that it can have no effect upon the constitutionality of the acts. We have no doubt that the Legislature gave expression to a generally recognized fact that an emergency in the economic affairs existed, but the constitutionality of the acts cannot be tested or decided upon that ground. If the law under consideration was unconstitutional in the ab-

sence of an emergency, in our opinion it cannot be held to be constitutional because of any fancied or real emergency, but its constitutionality must be tested in the same way as if it had been passed in times of economic prosperity. *Kenly v. Huntingdon Bldg. Assn.*, 166 Md. 182, 170 A. 526.

Guided by that principle, the question resolves itself into whether or not the classification made by the Legislature in chapters 56 and 57 of the Extra Session of 1933 is a reasonable one, or so arbitrary and capricious as would warrant the court in striking them down. We must bear in mind that this legislation deals solely with a remedy, and the Legislature doubtless concluded that the remedies theretofore afforded for every fractional owner of a mortgage should be modified or changed so that the particular remedy could only be exercised by those mortgagees, singly or in combination, who controlled or represented twenty-five per cent. of the mortgage debt. It was doubtless brought to the legislative attention that, under the provisions of the existing law, the holders of minute fractions of a mortgage were making use of its provisions in cases where the real and substantial interests of the large majority holders in a given mortgage would have their security, and the opportunity of realizing the full amount of the mortgage, seriously endangered. This being in the legislative mind is demonstrated by the preamble of the acts in question. This was an evil found by the Legislature to exist, and the purpose of the classification was to diminish the evil by determining that this remedy should be only available to those holding at least twenty-five per cent. of the mortgage debt then unpaid. The classification thus made would seem clearly to have direct relation to the purpose which the Legislature had in mind, and which we cannot say was arbitrary or fanciful.

In Nos. 11 and 12 of this Term we had occasion to fully consider and determine the power of the Legislature to make classifications; and it is not necessary to repeat what was there said, or cite again the authorities therein

referred to. If the classification here made had been original legislation upon this subject, it would hardly be contended that it was arbitrary or unreasonable; and the fact that it is made in substitution of a remedial act can make no difference in respect to its constitutionality. Classification being primarily a question for the Legislature, and the legislation acting uniformly and equally upon all persons within the designated classes, and being found by us not to be arbitrary, fanciful, or capricious, it follows that it is not obnoxious to the constitutional provision relied upon.

For the reasons above set forth, we hold that chapters 56 and 57 of the Acts of the Extra Session of the General Assembly of 1933 have no effect upon the mortgage here in controversy; and the attempt therein to abrogate the summary remedies contained in the mortgage, during the time of the emergency therein specified, is abortive, as impairing the obligation of a contract contained in the mortgage; and, so far as affecting the mortgage now under consideration, is unconstitutional and void.

*Decree affirmed, with costs to the appellees.*

URNER, J., concurs in the result.