Jeanette **PERKINS**, Administratrix of the Estate of Sandra Elaine Lindsay, Deceased

v.

**CITY OF PHILADELPHIA and Kevin M. Tucker, Individually and as Commissioner of the City of Philadelphia Police Department, and Lieutenant Leiper, and Detective Cannon, and Detective Vales, and Julio Aponte, and Sergeant Detective Julius Armstrong.**

Civ. A. No. 90–4636.

United States District Court, E.D. Pennsylvania.

May 23, 1991.

**314**

Neil Perloff, Fredric D. Rubin, Neil, Perloff & Associates, Philadephia, Pa., for plaintiff.

Randall D. Simmons, Alan C. Ostrow, City of Philadelphia, Law Dept., Philadelphia, Pa., for defendants.

VAN ANTWERPEN, District Judge.

This 42 U.S.C. § 1983 civil rights action with pendent state claims of negligence has arisen in the aftermath of the unspeakable crimes committed by serial killer Gary Heidnik ("Heidnik"). Plaintiff Perkins, mother of decedent, Sarah Lindsay, asserts deprivation of due process, unequal protection of the law, and inadequate police investigation proximately caused the death of her daughter, a mentally handicapped young woman, abducted, tortured, and ultimately suffocated to death by Heidnik. Before the court is defendants City of Philadelphia and various police officers' motion to dismiss the complaint "for failure to state a claim upon which relief may be granted." Fed.R.Civ.P. 12(b)(6).

STANDARD OF REVIEW

The familiar Rule 12(b)(6) criteria apply to the disposition of this motion. In reviewing the complaint, we accept as true all factual allegations and all reasonable inferences that can be drawn therefrom, *Unger v. National Residents Matching Program*, 928 F.2d 1392, 1395 (3d Cir.1991), and we view them in the light most favorable to plaintiff, the non-moving party, *Mortensen v. First Federal Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir.1977). Only if we are certain no relief could be granted under any set of facts that could be proved will we dismiss the complaint. *Sturm v. Clark*, 835 F.2d 1009, 1011 (3d Cir.1987). Thus, our decision rests on the legal sufficiency of plaintiff's case.

FACTUAL BACKGROUND

For purposes of this motion, these are the relevant facts. Decedent, chronologically aged twenty-five, suffered from a mild mental handicap that limited her abilities to those of a fifteen-year-old at best. She had a job and regularly checked in with her family twice a day. On Saturday, November 27, 1986, she left home to buy medicine at a local discount store. She was abducted en route by Heidnik. Plaintiff reported her daughter missing to the Philadelphia Police Department on November 29, 1986. Defendant Sergeant Armstrong was assigned to investigate decedent's disappearance. He was informed of decedent's mental handicap and the absence of the habitual phone calls. Plaintiff also conveyed to him from the outset of the investigation her suspicion that Heidnik had kidnapped her daughter.

Between November 29, 1986, and December 2, 1986, plaintiff and her family provided the police with the following information about Heidnik: his first name, his telephone number, his address, his three-year association with decedent, and a misspelled version of his last name. Plaintiff also told police that members of decedent's family visited Heidnik's house on December 2, 1986, and met some of Heidnik's neighbors who identified a picture of the decedent as a woman they had seen enter Heidnik's house earlier. Without verifying the spelling of Heidnik's last name with any of the other available personal information, Defendant Armstrong ran a computer check of Heidnik's criminal history. Because Defendant Armstrong entered the misspelled version into the computer, he did not learn of Heidnik's prior conviction for kidnapping and rape of a mentally retarded woman. Defendant Armstrong also did not learn of the January 1986 protective order filed under the Pennsylvania Protection from Abuse Act and entered against Heidnik by his ex-wife Betty Heidnik.

Following decedent's family visit to Heidnik's house, they received a letter apparently from decedent, postmarked from New York, New York, saying she would call soon. Plaintiff relayed this to the police

along with additional information she had received from one Cyril "Tony" Brown, a mentally handicapped mutual friend of decedent and Heidnik. Heidnik had supposedly given Brown a new car in appreciation for bringing decedent to Heidnik and had offered Brown $100.00 to impregnate decedent. On December 22, 1986, plaintiff received a Christmas card apparently from decedent, postmarked from the Bronx, enclosing ten dollars. Plaintiff gave the letter to the police and told them decedent had only twelve dollars when she disappeared. The police did analyze the handwriting on decedent's correspondence and concluded there was no evidence of stress.

Finally, plaintiff told the police the disturbing information she received from Heidnik's ex-wife Betty Heidnik, with whom plaintiff spoke in January 1987. Betty Heidnik told plaintiff of her escape from Heidnik who had held her and other women captive, his deviant sexual practices with these women, his penchant for torturing them, and his habit of blasting loud music out the windows so no one could tell what was happening inside.

Defendant Armstrong specifically promised members of decedent's family that he would obtain a search warrant for Heidnik's house, but he did not. The police field investigation, according to plaintiff's allegations, consisted of questioning strangers on the street and knocking on some doors in the neighborhood where Heidnik lived. The police then terminated the investigation of decedent's disappearance in keeping with alleged police policy that assumes missing adults are not victims of abduction and do not require the same investigative attention as missing minors. On March 27, 1987, police found some of the remains of decedent's dismembered body in Heidnik's house.

DISCUSSION

Mindful of these allegations and the standard by which we must review them, we examine plaintiff's case. Plaintiff originally brought suit in the Court of Common Pleas of Philadelphia County on these three counts:

Count One—Negligence;

Count Two—42 U.S.C. Section 1983—Deprivation of Life and Liberty Without Due Process of Law;

Count Three—42 U.S.C. Section 1983—Denial of Equal Protection of the Laws

Complaint at 14, 19, 22.

Counts two and three are obviously theories of federal constitutional violations applied to defendants through the fourteenth amendment of the United States Constitution. The court's original subject matter jurisdiction over these counts formed the basis upon which defendants properly removed this action from state to federal court. 28 U.S.C. §§ 1441, 1443.

The state negligence count is founded upon the Pennsylvania common law "special relationship" exception to the general rule that bars private liability suits against police officers for failure to protect specific individuals. Under this rule, police officers owe only a general duty of protection to the public at large, the dereliction of which is to be redressed in a public prosecution or an internal administrative proceeding, not in a private suit for monetary damages. Defendants have requested the court to exercise pendent jurisdiction over this claim.

We turn first to the federal claims. As defendants argued in their supporting brief and plaintiff properly conceded in her response, Count Two, plaintiff's due process claim, is barred by the Supreme Court's decision in *DeShaney v. Winnebago County Department of Social Services*, 489 U.S. 189, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989) (state's due process duty to protect individual arises only when state has affirmatively acted to restrain individual's freedom to act on his own behalf). We therefore only consider plaintiff's equal protection action.

■ Plaintiff's claim of an equal protection violation is somewhat confusing. In her complaint, plaintiff says defendants "intentionally discriminated against Plaintiff's decedent, Sarah Lindsay, by failing to accord her the same quality of police protection it would have provided another member of the community who had not yet

316

attained the age of majority under and pursuant to Pennsylvania law." (Complaint at ¶ 47). Plaintiff attacks police department policy that supposedly endorses investigating reports of missing minors with more care and attention than reports of missing adults. (Complaint at ¶ 48). By adherence to this policy, plaintiff contends defendants unconstitutionally discriminated against the decedent on the basis of her age.

In the opposing brief, however, plaintiff's counsel drops the challenge to this age-based policy. Counsel argues instead that defendants unconstitutionally deprived decedent of the benefit of this policy by failing to classify decedent as a minor according to her "mental age." (Plaintiff's Reply at 7). Counsel implies defendants denied decedent equal protection of the laws by the absence of a policy that would have taken decedent's mental handicap into account when deciding whether she was an adult or a minor. In contrast to the complaint, which appears to claim discrimination based on age, plaintiff's response to the motion to dismiss claims discrimination on the basis of mental handicap. In fairness to the plaintiff, we will look at both theories of an equal protection violation.

 Judicial interpretations of the equal protection clause have all recognized that governmental action is classification-oriented. *Philadelphia Police & Fire Ass'n for Handicapped Children, Inc. v. City of Philadelphia*, 874 F.2d 156, 162 (3d Cir. 1989). Unless state action burdens a fundamental interest or hinges upon a suspect or quasi-suspect criterion, "courts are quite reluctant to overturn governmental action on the ground that it denies equal protection of the laws." *Vance v. Bradley*, 440 U.S. 93, 96–97, 99 S.Ct. 939, 942–43, 59 L.Ed.2d 171 (1979). Plaintiff has not suggested that defendants deprived decedent of a fundamental right. Rather, by reason of age, with or without reference to mental handicap, plaintiff says defendants improperly used decedent's adult age as the justification for the limited time and resources they allocated to the investigation of her disappearance. Classifications based on

age or mental handicap, however, do not trigger heightened scrutiny. *Massachusetts Bd. of Retirement v. Murgia*, 427 U.S. 307, 312–14, 96 S.Ct. 2562, 2567, 49 L.Ed.2d 520 (1976) (age classifications receive minimal scrutiny); *City of Cleburne v. Cleburne Living Center, Inc.*, 473 U.S. 432, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985) (mentally retarded not suspect or quasi-suspect group). The policy plaintiff challenges need only be rationally related to a legitimate government purpose. *Murgia*, 427 U.S. at 313–14, 96 S.Ct. at 2567; *Cleburne*, 473 U.S. at 441–42, 105 S.Ct. at 3255. The fact that defendants' actions were administrative rather than legislative does not affect the scrutiny they receive. *Philadelphia Police & Fire Ass'n*, 874 F.2d at 163.

Plaintiff has a difficult task in proving defendants do not meet the test of rational relation to a legitimate state interest. If drawing a distinction between adults and minors has a legitimate purpose and police could have reasonably believed the distinction served that purpose, the adult-minor classification of missing person reports passes constitutional muster. *Western & S. Life Ins. Co. v. State Bd. of Equalization*, 451 U.S. 648, 668, 101 S.Ct. 2070, 2083, 68 L.Ed.2d 514 (1981). The same analysis applies to treating missing person reports of mentally handicapped adults like those of non-handicapped adults. In either situation, we do not review the wisdom or limitations of police policy, only the legitimacy of its purpose. 451 U.S. at 670, 101 S.Ct. at 2084.

Police policy that distinguishes between the reports of missing minors and missing adults is obviously aimed at the protection of minors, an unquestionably legitimate purpose. It is also quite reasonable for defendants to believe that allocating more police resources to reports of missing minors will help achieve that goal of protection. Defendants' policy withstands minimal scrutiny as have other governmental actions taken to protect the moral, emotional, and physical wellbeing of minors. *See, e.g., City of Dallas v. Stanglin*, 490 U.S. 19, 109 S.Ct. 1591, 104 L.Ed.2d 18 (1989) (city ordinance limiting use of dance halls

to minors between the ages of 14 and 18 rationally related to protection of those teenagers and not violative of equal protection clause); *Rothner v. City of Chicago,* 725 F.Supp. 945 (N.D.Ill.1989), *aff'd,* 929 F.2d 297 (7th Cir.1991) (ordinance prohibiting minors from playing coin-operated video games during public school hours rationally related to legitimate interest of discouraging truancy and not violative of equal protection clause); *Bykofsky v. Borough of Middletown,* 401 F.Supp. 1242 (M.D.Pa.1975), *aff'd per curiam,* 535 F.2d 1245 (3d Cir.1976) (juvenile curfew ordinance rationally related to protection of minors and not violative of equal protection clause).

The law, however, does not equate mentally handicapped adults with minors. Traditional doctrines peculiar to minors—curfews, truancy laws, restrictions on marriage, child labor laws, contractual incapacity—do not apply to mentally handicapped adults, and we have found no cases that even suggest a constitutional rationale for doing so. While decedent might have benefitted from having her disappearance treated as if she were a minor, we cannot say defendants unconstitutionally erred by treating her as an adult. Degrees of mental handicap vary widely. In the instant case, plaintiff's complaint describes decedent's condition as "mild." It is not for the court to impose upon defendants the obligation of developing and maintaining a policy whereby police officers must evaluate a missing adult's mental handicap and reduce the adult's age accordingly based upon representations of mental handicap made to the police by the person filing the report.

Decedent's fate was tragic. The police may or may not have investigated her disappearance with due care. But, their treatment of decedent as an adult did not violate the United States Constitution. Under the lenient standard of rational relationship, we find that plaintiff could not present any set of facts that would tend to show the police policy of affording missing reports of minors more time and police resources was irrational or linked to an illegitimate objective. Plaintiff's equal protection claim must fail.

■ Having dismissed the two federal claims, which supported the removal of this case to federal court in the first place, we are left with the question of whether to review plaintiff's remaining state law negligence action. Plaintiff has asked that we transfer the case back to state court in the event we dismiss the federal claims. Defendants have asked the court to review the legal sufficiency of this claim under the court's power to exercise pendent jurisdiction.

The doctrine of pendent jurisdiction, as articulated in *United Mine Workers v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966), permits federal courts to assert jurisdiction over an entire action containing both federal and state claims contingent upon a two-step analysis. First, the federal and state claims must "derive from a common nucleus of operative fact" and be "such that [a plaintiff] would ordinarily be expected to try them all in one judicial proceeding." *Gibbs* at 725, 86 S.Ct. at 1138. Secondly, *Gibbs* required courts to weigh case-by-case the values of judicial economy, convenience, fairness, and comity before deciding to exercise its jurisdictional power. The *Gibbs* approach emphasized flexibility and broad discretion. Relying on *Gibbs,* the Supreme Court held that a federal district court could remand a properly removed case to state court when only state-law claims remained to be litigated. *Carnegie–Mellon University v. Cohill,* 484 U.S. 343, 348, 108 S.Ct. 614, 618, 98 L.Ed.2d 720 (1988). Under *Cohill,* we have the power to remand the case; under the balancing test of *Gibbs,* we deem it prudent to do so. *See Cohill* at 350, 350 n. 7, 108 S.Ct. at 618–19, 619 n. 7. (discussing *Gibbs* court belief that relevant values weighed strongly against asserting jurisdiction over state claims in federal lawsuit where all the federal-law claims had dropped out).

Our decision to remand plaintiff's case to state court is also supported by legislative act. In 1990, Congress codified the doctrine of pendent jurisdiction and the caselaw of *Gibbs* and *Cohill* in 28 U.S.C.A. § 1367 (West Supp.1991) under the heading

"supplemental jurisdiction". Congress gave district courts both power to exercise supplemental jurisdiction and discretion in its use. The statute reads in pertinent part:

(c) The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if—

(1) the claim raises a novel or complex issue of State law,

(2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,

(3) the district court has dismissed all claims over which it has original jurisdiction, or

(4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C.A. § 1367(c) (West Supp.1991).

Not only do we rest our decision to remand on our dismissal of plaintiff's federal claims, § 1367(c)(3), we decline to exercise jurisdiction because of the complex issues raised by plaintiff's state law negligence action, § 1367(c)(1). The Supreme Court of Pennsylvania has not reviewed the issue of whether a police officer's promise to obtain a search warrant creates a special relationship with either the promisee or a beneficiary of the promisee. Neither has Pennsylvania law dealt with the gross negligence alleged in this case. Moreover, notions of comity restrain us from needlessly deciding issues of state law that are rightfully the province of state courts. Plaintiff originally filed in state court and back to that forum we transfer her case.[1]

---

1. For procedural guidance in transferring this case to the Court of Common Pleas of Philadel-

phia County, see generally 42 Pa.Cons.Stat.Ann. § 5103 (Purdon Supp.1991).