**Joseph B. GREEN; Cheryl D. Hailey**

**v.**

**James M. ZENDRIAN; John P. Jendricks; Samuel F. Bosley, III; George O. Smith; and Deirdre A. Hill.**

**Civil Action No. S 95–439.**

United States District Court,
D. Maryland.

Feb. 14, 1996.

**494**

Paul R. Kramer, Baltimore, MD, Allan Heneson, Gordon & Heneson, Baltimore, MD, for Plaintiffs.

Paul D. Shelton, Piper & Marbury, Baltimore, MD, for Defendants.

## MEMORANDUM OPINION

SMALKIN, District Judge.

This civil rights action arose out of an incident in which the plaintiffs, Joseph Green and Cheryl Hailey, were arrested by officers of the Baltimore City Police Department. The plaintiffs' subsequent twelve-count complaint against the officers, which was filed in the Circuit Court for Baltimore City, included claims under 42 U.S.C. § 1983, four Maryland common law torts, and two constitutional torts arising under the Maryland Declaration of Rights. The case was removed to this Court pursuant to 28 U.S.C. §§ 1441 and 1446. On February 1, 1996, shortly after the transfer of the case to the undersigned, this Court sent a letter to counsel, advising them that it was inclined to exercise its discretion under 28 U.S.C. § 1367(c) to decline supplemental jurisdiction over the many claims based on state law. In its letter, the Court advised counsel that it would hear argument on the jurisdictional issues prior to trial on February 6, 1996. Although the plaintiffs expressed a preference to have all claims tried in this Court, the defendants did not object to the Court's decision. The plaintiffs requested that the state claims be remanded to the state court, rather than dismissed without prejudice, so that the plaintiffs would not incur the additional expense of reinstituting the litigation. The defendants made no objection to the plaintiffs' proposal.[1] Accordingly, this Court entered an order remanding the state causes of action to the Circuit Court for Baltimore City pursuant to 28 U.S.C. § 1367(c). The federal claims were then tried, resulting in a jury verdict and/or judgments as a matter of law in favor of all defendants. This opinion sets forth the reasons for the Court's declination of supplemental jurisdiction. In that it is entered after completion of the trial, some reference will be made to certain facts that emerged at trial.

### A. Facts

On December 29, 1994, the plaintiffs, Joseph Green and Cheryl Hailey, filed a com-

---

1. It is hard to imagine what principled objection the defendants could have had. This Court's decision guaranteed the defendants, who were state officers, a state trial on the plaintiffs' state law claims.

plaint in the Circuit Court for Baltimore City, naming as defendants James Zendrian, John Jendrek, Samuel Bosley, George Smith, and Dierdre Hill. Each of the defendants was a member of the Baltimore City Police Department at the time of the acts in suit. On February 13, 1995, the case was removed to this Court.

The incident giving rise to the complaint was the warrantless arrest of Hailey and Green in the early morning of February 20, 1994, in Hailey's apartment. The parties' pre-trial submissions and the evidence at trial both showed that the resolution of the federal aspects of the case would depend upon whether the plaintiffs' or the defendants' account of the incident was more credible to the jury. It was undisputed both that Green had been injured by the force used to effect his arrest and that the police officers had probable cause to arrest him.[2] The plaintiffs alleged that the officers attacked and unjustifiably beat Green, even though Green was not resisting arrest. The defendants, by contrast, asserted that Green had been "abusive and uncooperative," and that they had used only reasonable force to take him into custody.

The parties gave similarly irreconcilable accounts of Ms. Hailey's conduct. According to the plaintiffs, Ms. Hailey had stood quietly while Green was being beaten by the police, mildly remonstrating with some of the defendants. According to the defendants, Hailey screamed, became hysterical, and tried to intervene physically on Green's behalf. The parties agreed that Hailey was arrested at the scene and later charged with the common law offense of obstructing or hindering a police officer in the performance of official duties.

During the early stages of trial, it became clear that each plaintiff was asserting a separate violation of the Fourth Amendment which might give rise to a cause of action under 42 U.S.C. § 1983. Green's federal cause of action was based upon a theory that the police used excessive force to arrest him, whereas Hailey alleged that the police had arrested her without probable cause. There was no evidence to support any allegation that the plaintiffs' civil rights had been violated in any other way, and the plaintiffs' lawyers accordingly acknowledged that each plaintiff was proceeding upon his or her single substantive theory as described above. In addition, the plaintiffs alleged that the defendants had conspired to commit the substantive violations of their federal civil rights. Consequently, all federal issues for trial turned upon the jury's factual determinations with respect to the events of February 20, 1994.

As noted *ante*, the federal causes of action were originally accompanied by numerous claims under Maryland law. The plaintiffs had sought to recover damages for assault, battery, false arrest, malicious prosecution, and violations of their rights under Articles 24 and 26 of the Maryland Declaration of Rights. The plaintiffs sought compensatory and punitive damages in connection with both the federal and the state claims.

### B. Analysis

■ There is no doubt that this Court could, in its discretion, have exercised supplemental jurisdiction over the plaintiffs' state claims pursuant to 28 U.S.C. § 1367(a) ("the district courts shall have supplemental jurisdiction over . . . claims that are so related to claims in the action within the original jurisdiction that they form part of the same case or controversy. . . .") Nonetheless, under the circumstances of the case, sound discretion counselled against this Court's exercising that supplemental jurisdiction. Subsection (c) of § 1367 sets out four categories of circumstances in which a district court may, in its discretion, decline jurisdiction over state claims. This case presented three of the four: a complex and novel issue of Maryland law, (§ 1367(c)(1)); state claims that substantially predominate over the federal claims (§ 1367(c)(2)); and exceptional circumstances that provide compelling reasons for declining jurisdiction (§ 1367(c)(4)).

---

**2.** The parties stipulated before trial that the police had probable cause to enter Hailey's apartment. At trial, counsel for Mr. Green conceded that the defendants likewise had probable cause to arrest Green for an alleged death threat against Hailey's downstairs neighbors.

The federal issues in this case were straightforward. The Supreme Court held in *Graham v. Connor*, 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989), that an arrest made with excessive force violates the Fourth Amendment's prohibition against unreasonable seizures and may therefore form the basis of a cause of action under 42 U.S.C. § 1983. The *Graham* opinion clearly set forth a number of factors that a jury might consider in assessing whether the force used to effect an arrest is reasonable. 490 U.S. at 396–397, 109 S.Ct. at 1872. Likewise, the circumstances under which an arrest made without probable cause may violate the Fourth Amendment are well-established in this Circuit. *See Clipper v. Takoma Park*, 876 F.2d 17, 19 (4th Cir.1989), and cases there cited. Finally, the Fourth Circuit's decision in *Hafner v. Brown*, 983 F.2d 570 (4th Cir.1992), clearly articulates the legal standards applicable to the plaintiffs' conspiracy claim.

Both the applicable Fourth Amendment law and the law of conspiracy to violate federal civil rights could readily be applied to the facts of the case. The disposition of each federal claim turned on the jury's factual determinations with respect to the underlying factual dispute. By contrast, the plaintiffs' state law claims created a morass of complicated and overlapping issues of fact and law.

### a. The case presented a serious issue of state constitutional law

This Court may decline supplemental jurisdiction over a state claim which "raises a novel or complex issue of State law," or where "there are other compelling reasons for declining jurisdiction." 28 U.S.C. § 1367(c)(1) & (c)(4). Mr. Green and Ms. Hailey's action raised a serious issue of first impression with respect to the interpretation of Article 26 of the Maryland Declaration of Rights, namely whether an arrest made with excessive force violates Article 26. The question is a difficult one and should, for reasons of comity, be resolved by the courts of Maryland.

This Court has been unable to find any Maryland decision holding that an arrest made with excessive force violates Article 26. Ordinarily, this Court could determine whether an excessive force claim is cognizable under Article 26 by reference to well-established interpretive principles of Maryland law. With regard to the particular constitutional question at issue here, however, Maryland's two best-entrenched principles of constitutional construction lead to opposite conclusions.

The first principle of Maryland constitutional interpretation directs courts to give effect to the plain language of the constitution. As Judge J. Dudley Digges wrote for the Court of Appeals,

> "[g]enerally speaking, the same rules that are applicable to the construction of statutory language are employed in interpreting constitutional verbiage ... Accordingly, it is axiomatic that the words used in the enactment should be given the construction that effectuates the intent of its framers ...; such intent is first sought from the terminology used in the provision, with each word being given its ordinary and popularly understood meaning ...; and, if the words are not ambiguous, the inquiry is terminated, for the Court is not at liberty to search beyond the Constitution itself where the intention of the framers is clearly demonstrated by the phraseology utilized."

*Brown v. Brown*, 287 Md. 273, 277–278, 412 A.2d 396, 398–399 (1980) (citations omitted). *See also Luppino v. Gray*, 336 Md. 194, 204 n. 8, 647 A.2d 429, 434 n. 8 (1994); *Rand v. Rand*, 280 Md. 508, 511, 374 A.2d 900, 902 (1977); *Harbor Island Marina v. Board of County Comm'rs of Calvert County*, 286 Md. 303, 311, 407 A.2d 738, 742 (1979); *Mauzy v. Hornbeck*, 285 Md. 84, 92, 400 A.2d 1091, 1095–1096 (1979). Article 26 of the Maryland Declaration of Rights provides as follows:

> "That all warrants, without oath or affirmation, to search suspected places, or to seize any person or property, are grevious [sic] and oppressive; and all general warrants to search suspected places, or to apprehend suspected persons, without naming or describing the place, or the person in special, are illegal, and ought not to be granted."

The constitutional limitations set forth in Article 26 apply only to warrants, both general and particular. Standing alone, therefore, the plain language of the Article appears to preclude a holding that Article 26 protects Maryland's citizens against the use of excessive force by arresting law enforcement officers.

An alternative line of authority, however, suggests the opposite conclusion. Numerous Maryland decisions interpreting Article 26 have held that the Article is to be construed *in pari materia* with its federal counterpart, the Fourth Amendment to the United States Constitution. *See, e.g., Gahan v. State,* 290 Md. 310, 430 A.2d 49 (1981); *Liichow v. State,* 288 Md. 502, 509 n. 1, 419 A.2d 1041, 1044 n. 1 (1980) ("Article 26 is generally in *pari materia* with the Fourth Amendment and similarly prohibits unreasonable searches and seizures"); *Merrick v. State,* 283 Md. 1, 4 n. 2, 389 A.2d 328, 330 n. 2 (1978); *Givner v. State,* 210 Md. 484, 124 A.2d 764 (1956); *Blum v. State,* 94 Md. 375, 51 A. 26 (1902). Ordinarily, to the extent that a provision of the Maryland constitution is held to be in *pari materia* with a federal counterpart, the two constitutional provisions are applied " 'in like manner and to the same extent,' " and " 'decisions of the Supreme Court on the [federal provision] are practically direct authorities' " for interpreting the Maryland provision. *Attorney General of Maryland v. Waldron,* 289 Md. 683, 704–705, 426 A.2d 929, 941 (1981) (quoting *United States Mortgage Co. v. Matthews,* 167 Md. 383, 395, 173 A. 903, 909, *rev'd on other grounds,* 293 U.S. 232, 55 S.Ct. 168, 79 L.Ed. 299 (1934), and *Bureau of Mines v. George's Creek,* 272 Md. 143, 156, 321 A.2d 748, 755 (1974)). The Supreme Court has held that the Fourth Amendment prohibits the use of excessive force in effecting an arrest. *Graham v. Connor,* 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). Consequently, to the extent that the Supreme Court's interpretation of the Fourth Amendment is "practically direct" authority with respect to a Maryland court's interpretation of Article 26, Article 26 should be construed to prohibit arrests made with excessive force.

In light of the two conflicting lines of precedent, this Court cannot predict with any certainty how the Court of Appeals would decide the issue presented here. By its terms, Article 26 places constitutional constraints only upon the procedures for obtaining and executing warrants. More specifically, Article 26 does not contain the Fourth Amendment's prohibition against *unreasonable* seizures, the prohibition which gave rise to the Supreme Court's holding in *Graham v. Connor. See* 490 U.S. at 395, 109 S.Ct. at 1871 (holding that excessive force claims "should be analyzed under the Fourth Amendment and its 'reasonableness' standard.") Under these circumstances, a Maryland court might interpret Article 26 differently from the Fourth Amendment with respect to excessive force claims, despite the fact that Article 26 and the Fourth Amendment are construed *in pari materia.*[3] On the other hand, the overwhelming weight of Maryland authority shows that parallel federal and state constitutional provisions are almost invariably interpreted as identical in scope, despite the Court of Appeals' insistence that they are capable, in theory, of divergent application. *See, e.g., Tichnell v. State,* 287 Md. 695, 415 A.2d 830 (1980) (Article 17 of the Declaration of Rights); *Attorney General v. Johnson,* 282 Md. 274, 385 A.2d 57, *appeal dismissed,* 439 U.S. 805, 99 S.Ct. 60, 58 L.Ed.2d 97 (1978) (Article 19); *Lodowski v. State,* 307 Md. 233, 513 A.2d 299 (1986) (Article 21); *Craig v. State,* 322 Md. 418, 588 A.2d 328 (1991) (same); *Evans v. State,* 333 Md. 660, 637 A.2d 117, *cert. denied,* —— U.S. ——, 115 S.Ct. 109, 130 L.Ed.2d 56 (1994) (Article 22); *Murphy v.*

---

**3.** The Court of Appeals has never suggested that Maryland's constitutional provisions are identical to their federal counterparts. On the contrary, the Court has repeatedly held that state and federal provisions *in pari materia* are "obviously independent and capable of divergent application." *Murphy v. Edmonds,* 325 Md. 342, 354–

355, 601 A.2d 102, 108 (1992). *See also Attorney General of Maryland v. Waldron,* 289 Md. at 705, 426 A.2d at 941 (describing the federal and state guarantees of equal protection as "capable of divergent effect, [but] ... so intertwined that they, in essence, form a double helix, each complementing the other.")

*Edmonds,* 325 Md. 342, 601 A.2d 102 (1992) (Article 24).[4]

■■■ It is axiomatic that questions of state constitutional law are to be answered by state courts, rather than by the federal judiciary. Indeed, the existence of a serious question of state constitutional law may, where appropriate, require federal abstention. *See, e.g. Harris County Comm'rs Court v. Moore,* 420 U.S. 77, 84–85, 95 S.Ct. 870, 875–876, 43 L.Ed.2d 32 (1975); *Reetz v. Bozanich,* 397 U.S. 82, 85, 90 S.Ct. 788, 789, 25 L.Ed.2d 68 (1970). In discussing the federal courts' discretionary exercise of jurisdiction over state claims, the Supreme Court has cautioned that "[n]eedless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law." *United Mine Workers of America v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966). *See also Borges v. City of West Palm Beach,* 858 F.Supp. 174, 177 (S.D.Fla.1993); *St. George v. Mak,* 842 F.Supp. 625 (D.Conn. 1993); *Support Ministries v. Village of Waterford,* 799 F.Supp. 272 (N.D.N.Y.1992); *Perkins v. City of Philadelphia,* 766 F.Supp. 313, 318 (E.D.Pa.1991) ("notions of comity restrain us from needlessly deciding issues of state law that are rightfully the province of state courts.").

Congress has authorized federal district courts to decline supplemental jurisdiction when they would otherwise have to decide a "novel or complex issue of State law." 28 U.S.C. § 1367(c)(1). Because a novel issue of state law before this Court was a complex one involving the interpretation of the Maryland Declaration of Rights, principles of comity counselled against the exercise of supplemental jurisdiction. This Court's obligation to avoid making an unnecessary decision in an unsettled area of state constitutional law was an important factor in its decision to remand the state causes of action to the Circuit Court for Baltimore City.

### b. The state claims predominated over the federal claims

This Court may decline to exercise supplemental jurisdiction over the state claims in an action if the state component of the case "substantially predominates over the claim or claims over which the district court has original jurisdiction." 28 U.S.C. § 1367(c)(2). Federal courts have not hesitated to dismiss or remand state causes of action where the state claims would require "elements of proof that are distinct and foreign to [the federal] claim," and which would therefore "caus[e] a substantial expansion of [the] action beyond that necessary and relevant to the federal claim." *James v. Sun Glass Hut of California,* 799 F.Supp. 1083, 1085 (D.Colo.1992). *See also Bodenner v. Graves,* 828 F.Supp. 516 (W.D.Mich.1993); *Council of Unit Owners of the Wisp Condominium, Inc. v. Recreational Indus., Inc.,* 793 F.Supp. 120, 123 (D.Md.1992). The plaintiffs' state causes of action here involve elements of proof going beyond the scope of their federal claims. In addition, because of recent developments in Maryland law, the plaintiffs' state law claims would have required the jury to make a number of complex factual determinations which were unnecessary to the resolution of the federal issues.

The plaintiffs' federal case turned on the jury's resolution of the factual inconsistencies between the plaintiffs' and the defendants' versions of the events of February 20, 1995. The plaintiffs' state law causes of action, however, included a count alleging malicious prosecution, which would have required proof of events other than the circumstances of the plaintiffs' arrest. In order to establish that one or more of the defendants committed the tort of malicious prosecution, the plaintiffs would have had to establish that the defen-

---

4. By a quirk of legal fate, the interpretation of Article 26 of the Maryland Declaration of Rights is a particularly inappropriate question for this federal court to address. In *Maryland v. Garrison,* 480 U.S. 79, 107 S.Ct. 1013, 94 L.Ed.2d 72 (1987), the Supreme Court reversed a decision of the Court of Appeals which had held a search illegal under both the Fourth Amendment and Article 26 of the Declaration of Rights. Refusing to sustain the Court of Appeals' judgment on the state law grounds, the Court interpreted the state court's opinion as saying that "the Maryland constitutional provision is construed *in pari materia* with the Fourth Amendment." 480 U.S. at 83–84, 107 S.Ct. at 1016. A Maryland court has greater latitude than this Court to decline to follow the Supreme Court's interpretation of the Maryland Declaration of Rights.

dants (or some of them) filed criminal charges against the plaintiffs, that the charges were filed without probable cause, that the charges were resolved in the plaintiffs' favor, and that the defendants filed the charges for some purpose other than that of bringing a criminal to justice. *Montgomery Ward v. Wilson,* 339 Md. 701, 664 A.2d 916 (1995). Plainly, most of the evidence required to establish these elements was irrelevant to the trial of the federal issues.

 The plaintiffs' counts alleging false arrest would also have broadened the scope of the litigation and led to potential juror confusion.[5] In Maryland, a false arrest is an arrest made without legal justification. *Ashton v. Brown,* 339 Md. 70, 119, 660 A.2d 447, 471 (1995), and cases there cited. Consequently, to render a verdict on Mr. Green's false imprisonment claim, the jury would have had to assess the defendants' legal authority to arrest Mr. Green under Maryland law, rather than considering the manner in which the arrest was effected. Likewise, the jury would have had to consider whether Ms. Hailey had been arrested in accordance with Maryland law.[6] A Maryland police officer has legal justification to arrest without a warrant when, *inter alia,* he has probable cause to believe that the arrestee has committed or attempted to commit a felony, or that the arrestee has committed or attempted to commit a misdemeanor in his presence. *See generally* Maryland Code Ann., Art. 27

§ 594B. Consequently, while Mr. Green's § 1983 claim turned upon evidence relating to allegations of excessive force and Ms. Hailey's § 1983 claim turned on the existence of federal probable cause, both plaintiffs' false arrest claims would have required a separate factual inquiry into whether the conditions justifying a warrantless arrest under Article 27, § 594B had been present.[7]

Lastly, recent developments in Maryland law would have required the jury in this five-defendant case to make an enormous number of particularized findings in order to support its verdict. In light of the decision of the Court of Appeals of Maryland in *Caldor, Inc. v. Bowden,* 330 Md. 632, 625 A.2d 959 (1993), a separate verdict with respect to both compensatory and punitive damages would have been necessary for each of the four common law torts and two constitutional torts. Furthermore, under Md.Cts. & Jud.Proc.Code Ann. § 11–109(b) (1995), the jury would have had to itemize any award of compensatory damages, specifying the sums awarded for past medical expenses, future medical expenses, past loss of earnings, future loss of earnings, noneconomic damages and other damages.

 The plaintiffs' cause of action for malicious prosecution would also have added substantially to the length of the verdict form because it would have required particularized factual findings on the issue of probable cause. The Court of Appeals held in *Palmer*

---

**5.** Mr. Green conceded at an early stage of the trial that there had been probable cause for his arrest, a concession that would have been fatal to his false arrest claim under the circumstances. This Court's decision with respect to supplemental jurisdiction was made before trial, however, on the basis of the parties' pretrial submissions, including bench memoranda and proposed jury instructions. It was clear from those submissions that Mr. Green based his *federal* cause of action exclusively on an excessive force theory. Mr. Green continued to press his claim for false arrest, however, and it appeared possible that evidence might be generated to support the claim under Maryland law.

**6.** By contrast, Ms. Hailey's § 1983 action, though based on the alleged illegality of her arrest, had to be resolved under federal law. "A section 1983 action ... is not predicated on the legality or illegality of an act under state law, but on whether that act deprives an individual of

'rights, privileges or immunities secured by the [federal] Constitution and laws.' " *Clipper v. Takoma Park,* 876 F.2d 17, 19 (4th Cir.1989) (quoting 42 U.S.C. § 1983, and citing *Street v. Surdyka,* 492 F.2d 368, 371–372 (4th Cir.1974)).

**7.** Confusingly, in addition to the distinct state and federal notions of probable cause involved in the § 1983 and state law claims, the combination of false arrest and malicious prosecution counts would have required separate determinations of probable cause. The propriety of the warrantless arrest for purposes of the false imprisonment count depended on whether the officers had probable cause to believe that the plaintiffs had engaged in conduct which would justify their arrest under Md.Code Ann. Art. 27, § 594B. The plaintiffs' malicious prosecution count, however, would have required proof that the defendants lacked probable cause to file criminal charges against the plaintiffs for the various offenses with which the plaintiffs were charged.

*Ford, Inc. v. Wood,* 298 Md. 484, 507, 471 A.2d 297, 309 (1984), and reiterated recently in *Montgomery Ward v. Wilson,* 339 Md. 701, 664 A.2d 916 (1995), that in malicious prosecution actions in Maryland the question of whether there was probable cause for the defendant to institute criminal proceedings against the plaintiff is one of law for the court. As a consequence, although the jury must determine the underlying facts with respect to probable cause, "the court should explain to the jury whether or not probable cause exists under the various factual scenarios which may be generated by the evidence." *Wilson,* 339 Md. at 716, 664 A.2d at 923. On the other hand, and to the great potential confusion of the jury, resolution of Ms. Hailey's federal claim involved only the jury's assessment of the existence of probable cause, without resolution of the issue to any extent by the Court.

Before trial, the plaintiffs filed with this Court a proposed special verdict form. The plaintiffs' proposed verdict form did not include separate findings for every tort as required by *Caldor,* did not itemize the compensatory damages, and did not include any proposed factual findings in conformity with *Palmer Ford.* Nevertheless, the form was fifteen pages long and required the jury to make eighty separate findings. The straightforward verdict form submitted to the jury for the federal claims occupied only two pages.

### c. The interplay between the state and federal claims is likely to be confusing to the jury

This Court has the statutory authority to decline jurisdiction over state claims if a case presents "compelling reasons for declining jurisdiction." 28 U.S.C. § 1367(c)(4). The interplay between the plaintiffs' state and federal causes of action was so likely to lead to juror confusion that the need to simplify the issues for the jury was compelling.

■■■■■ Mr. Green and Ms. Hailey both sought punitive damages in connection with both the federal and state claims. Punitive damages may be recovered in a § 1983 action based on a showing of reckless or callous indifference to the plaintiff's civil rights.

*Smith v. Wade,* 461 U.S. 30, 103 S.Ct. 1625, 75 L.Ed.2d 632 (1983). By contrast, a plaintiff may recover punitive damages on the Maryland claims raised in this action only if the defendants acted with "actual malice," defined as "evil or wrongful motive, intent to injure, knowing and deliberate wrongdoing, ill will or fraud." *Montgomery Ward v. Wilson,* 339 Md. 701, 728 n. 5, 664 A.2d 916, 929 n. 5 (1995). *See generally Montgomery Ward v. Wilson,* 339 Md. at 732, 664 A.2d at 931, and 339 Md. at 735, 664 A.2d at 933 (false imprisonment and malicious prosecution); *Heinze v. Murphy,* 180 Md. 423, 24 A.2d 917 (1942) (state constitutional torts). *See also Sawyer v. Humphries,* 322 Md. 247, 587 A.2d 467 (1991) (discussing whether "malice" sufficient to defeat a police officer's statutory privilege existed in action for assault and battery).

Consequently, the jury would have had to assess punitive damages under two separate standards, even though the plaintiffs' request for punitive damages under both the state and federal causes of action sought to punish the defendants for the same allegedly culpable conduct. Two sets of instructions, describing two different standards for awarding punitive damages, would have given rise to an obvious source of potential confusion for the jury. Such a high likelihood of confusion provided a compelling reason for this Court to decline to exercise jurisdiction over the state claims.

### III. Conclusion

Federal courts are courts of *limited* jurisdiction. Although Congress has given the federal courts discretionary authority to exercise supplemental jurisdiction over state claims, this Court must exercise its discretion wisely, with sensitivity towards legitimate state concerns and an eye towards the proper scope of federal jurisdiction. This case presented a serious issue of Maryland constitutional law which should be resolved by a Maryland court. It presented state law claims that were substantially more expansive and complex than the federal claims over which this Court had original jurisdiction. The federal claims involved the application of well-settled and fairly straightforward feder-

al law to a clearcut factual dispute. By contrast, the state law claims would have expanded the evidentiary scope of the trial and would have introduced a confusing welter of state legal standards, some of which differ only slightly from the applicable federal standards. The interplay among the state and federal causes of action was likely to confuse even the most attentive, careful, and intelligent juror.

In 28 U.S.C. § 1367(c), Congress specifically contemplated that certain circumstances might lead a federal court, in the sound exercise of its discretion, to decline to exercise supplemental jurisdiction over claims based on state law. In Mr. Green's and Ms. Hailey's case, a confluence of such circumstances guided this Court's decision to remand the state law claims to the Circuit Court for Baltimore City.